BREAUX, C. J.
This suit was dismissed by this court some time back. In a second suit, involving the same questions, surveyors were selected in accordance with section 2624 of the Revised Statutes.
Surveys have been made and surveyors have disagreed.
The surveyor for the parish of Red River ran and established a line as shown by his map and procés verbal. The surveyor of Caddo ran another and a different line. The matter of the survey and his procés verbal are in evidence.
The original act creating the parish of Red River is Act NO. 39, p. 86, of the year 1871. It was afterwards amended. Act No. 70, p. 108, of 1878. The last amendment is the one which puzzled the surveyors and with which they endeavored to comply. It is the act now before us for interpretation.
According to the survey of the surveyor for Caddo parish, the initial point of the line is on lower Bayou Pierre. From that point it follows the western bank of the bayou to Lake Cannisnia. Here the line was surveyed across the river. It then follows the meander course around Lake Cannisnia to the eastern bank of upper Bayou Pierre.
We do not find it possible to agree with that survey. The call in this direction is not certain. The surveyor of Caddo testified that some of the calls are meaningless, and, as we understand, he followed a course that he deemed most reasonable in interpreting the said statute, although the calls are uncertain.
Lake Cannisnia is a broad body of water when the water is at its height. The waters lose themselves through swamps. It has no shores and no defined banks. At low water it was shallow. It has been since redeemed, and now nearly all of its land is fertile and invites the farmer’s plow.
The purpose seems to have been to follow a water course from north to south in creating the parish of De Soto, and afterward the parish of Red River.
Bayou Pierre is an outlet of Red river on its west bank, parallel with the river, to which it returns after having deflected therefrom for a number of miles. It receives its supply of water from Red River. After Tomes Bayou had been closed, the water passing through it was much less than it had been. It discharged its remaining waters into Bake Cannisnia with sufficient current to preserve its channel, and the waters flowed down to lower Bayou Pierre, to the intersection with Red river, as before mentioned.
At one time the officers of the general government examined this bayou and lake, and recommended, because of certain impediments in Red river, the opening of a deep channel in this direction.
These waters are well known. It remains none the less as a fact that this lake was a part of Bayou Pierre, and it was this bayou, as we think, that the legislator who wrote the statute intended to follow; but unfortunately he was awkward in inserting some of the calls to be followed in establishing the parish lines. The result is that it is impossible to follow or establish lines in accor. *941 dance with some of the calls. It is evident •enough that the purpose, according to some of the calls, was to reach the bayou before named.
In the acts creating the parish of De Soto the calls are to a line in and up the bayou. Tn creating the parish of Red River it is not as plainly stated, although there is reason for thinking that it was the intention that the lines should be surveyed to the stream to which we have before referred.
That being a decided point, there is ample authority for holding that the line should follow the thread of the stream, and not the eastern or the western side.
If we consider the main channel as a lake itself, there is nothing forced in the conclusion that the line should run in the center of the channel, and that line can be followed north and south on the western side of the parish of Red River.
In any event it is not pointed out with any degree of certainty how it is possible to follow the margin of the lake.
Leaving that dilemma, we adopt the central line or thread, and find that there are ■decisions in other jurisdictions pertinent to that view. 4 Am. & Eng. Ency. of Law (2d Ed.) p. 812.
The presumption is that the waters selected as a boundary line usque ad medium filum are included as indicating the extent of the boundary. Id. p. 810.
“Where a stream itself is referred to as the boundary, or the line is described as running along the stream, or extending from one object on the bank to the other, as, for instance, bounding on and extending from one tree on the shore to the other, then the stream is a monument. The filum aquae is the boundary.” Id. p. 821.
Again, when the survey calls for deep swamp as a boundary, it was held that the ■creek or principal stream of the swamp was intended, and not the margin or outer edge of low swampy land that bordered on a central stream. Id. p. 835.
This appears quite pertinent. For the same reason it does seem that the main stream of the lake in this instance was the body of water intended to be the dividing line.
The following from Gould on Waterways, § 202, is direct and in point:
“Where counties are separated by a freshwater river, its thread is prima facie the boundary between them.”
The principle before mentioned found application in the case of State v. Burkton, 105 La. 516, 29 South. 970.
The thread of Sabine river, it was de^ creed, was the boundary between Texas and Louisiana.
Having come to a conclusion regarding the western boundary line of the parish of Red River, it remains with us to interpret the act to the extent necessary to establish the line north of that parish, between it and the parish of Caddo. Of course, the parish of Red River has no interest in this line west of Bayou Pierre.
The testimony in this ease shows that the projected line running east and west has heretofore, to some extent at least, been recognized (the line O, D, of the map of Scott).. For some reason this line has never been actually projected before this suit. There was an opening between the lines. It was not connected. There is no question, however, that it was the intention from the first that the line should be considered a continuing line, as surveyed at plaintiff’s instance in this cause.
It remains for us to close this opening, and thereby close this litigation. There is naught else to do. This is not done without data. It must be remembered that this line running east and west is referred to in the statute. Taking Bayou Pierre as the lake, which it is, for it alone has well-defined banks, under *943 the rule to which we have referred above, this line, referred to as line O, D, in Scott’s map of survey, connects at the center of this stream and becomes one line.
True, changes take place in streams and lakes. Deposits of sand elevate the soil. The contention is that changes have taken place in Lake Oannisnia, and that its contour is not that which it was years ago.
There may be truth in the contention; but it would not justify us, in the presence of the testimony, if we were to decide that Bayou Pierre of to-day is not substantially the same as it was in 1878.
It is therefore ordered, adjudged, and decreed that the judgment of the district court is avoided, annulled, and reversed. It is further ordered, adjudged, and decreed that our judgment heretofore handed down in this case, and in. regard to which we granted a rehearing, is annulled, avoided, and reversed. For reasons stated, it is ordered, adjudged, and decreed that the line O, D, on the map of E. E. Scott, surveyor, bearing date October 11, 1905, from point G on the map to the thread of Bayou Pierre, is approved and adopted as the boundary line between the parishes of Caddo and Red River.
It is ordered, adjudged, and decreed that the costs of the suit in the lower court be equally divided between the parties litigant and that defendant pay the cost of appeal.