BREAUX, C. J.
A dispute arose between the parish of Caddo and the parish of De Soto about the dividing line between the two parishes.
They respectively adopted an ordinance, under section 2624 of the Revised Statutes, to the end of fixing this boundary line. Each, the plaintiff and the defendant, appointed a surveyor to run and establish the disputed line. They disagreed, both as relates to the line and as relates to the meaning of Act No. 135, p. 77, of 1845 (amending Act No. 88, p. 52, of 1843, regarding this line), defining the boundary.
Failure to agree resulted in the parish of Caddo, in accordance with the survey of her surveyor, claiming the western line of Canr nisnia Lake in Bayou Pierre, as shown by his map of survey and procés verbal annexed thereto, as the dividing line.
A surveyor representing the parish of De Soto followed an entirely different line, which the defendant adopts and urges as the correct boundary line.
The following is an excerpt from the statute of 1845, relating to the line in question, to wit:
“That so much of the parish of Caddo as lies south and west of the Bayou Pierre and Cypress Bayou be annexed to and form part of the parish of De Soto.”
To this point the description was quite plain. The following in the same statute has given rise to different interpretations, to wit:
“The dividing line between the parishes shall begin in Bayou Pierre where the boundary line of the two parishes now crosses; thence it shall run up said river to the mouth of Wallace Lake.”
At this point the surveyor appointed by the parish of Caddo, Mr. Williams, on account of his interpretation of the statute found himself compelled to disregard entirely this portion of the statute. He could see no way of establishing any line in accordance with this description. He surveyed the line in accordance with the old government surveys, and located it along the southern and western boundary of Lake Cannisnia.
We will return for a moment to this interpretation later.
Should we follow the maps of surveys of years ago, made for the general government, and the account of the lay of the lake as given by United States officers, who did not survey, but examined, the lake in passing, it is probable that the line would have to follow the western shore. But the recent surveys and the weight of the testimony is to the contrary. The testimony shows that the lake was at one time an enlargement of Bayou Pierre.
We have carefully considered the evidence and will insert here a summary.
Surveyor Bell, who in that capacity represented De Soto, in his official survey traced the channel of the stream from end to end. He swore that he was familiar with the locality, and particularly with the lake. He had surveyed it as a sworn officer to fix the locus in quo.
N. B. Franklin testified that he had been on the lake at different points a number of times, and knew enough about it to state *123 that the channel ran through the lake from one stream to the other of Bayou Pierre.
N. S. Frierson, whose testimony is clear and direct, stated that a great part of his life he had lived within two miles of the lake, was familiar with it, and that there had been no change in the course of the channel to his knowledge since 1880.
E. S. Scott, surveyor, had lived within seven miles of the lake, was familiar with it since 1888, had traced out the course of Bayou Pierre through the lake, and that there were well-defined banks most of the way in the lake, which confined the channel.
E. E. Webb was equally as positive that Bayou Pierre is a well-defined stream through Lake Cannisnia, and that banks confined its water and rendered it distinct from the lake itself.
From the testimony of these witnesses, not impeached and not shown erroneous, it appears that upper Bayou Pierre preserved its waters through the lake. There were distinct sides formed in the channel, that kept the streams within their bounds. The lake had been an enlargement of the bayou at that place. Otherwise, how is it that the two streams, Bayou Pierre above and Bayou Pierre below Cannisnia, retained the one name of Bayou Pierre? On the other hand, there is a steamboat channel along the western shore, which the defendant contends is high land, part of it under cultivation, and the remainder will soon be, for it is said that these lands are fertile. It was formerly a channel in high water, kept up by the industry of man, who cut down trees on the way and opened the road for boats to* pass. It was never a main connecting link of the Bayou Pierre above to the Bayou Pierre below.
One, or perhaps two, of the officers of the general government, who examined it, thought that it was the main channel. But this impression cannot prevail against the I testimony of which we have made a summary above.
Part of the history of the locus in quo is-that in 1893 a dyke was built across Bayou Pierre, and in 1898 a dyke was built across. Tomes Bayou, thus cutting off the far greater portion of the supply of water received by Bayou Pierre. The bed of Cannisnia became* dry, and is now fertile land. The old boundaries have been disturbed by the change in.this lake.
We do not see our way clear to re-establish them by following its western shore,. through or along the steamboat channel.
In considering this case we find that Act No. 135, p. 77, of 1845, amending Act No-88, p. 52, of 1843, both relating to this boundary line, has two calls — one which possibly points to the western side of the lake, and the other-clearly indicating the channel of Bayou. Pierre as the line.
According to the first act cited the first call indicates- the boundary line as being, along the township line between townships 14 and 15, and strikes the western bank of Bayou Pierre; thence in a northerly direction. According to the authorities of Caddo parish that northern direction would be along the western bank. We cannot agree with that view.
We think that the northern direction follows the center or thread of the stream through Bayou Pierre, and again through Lake Cannisnia, and again through Bayou-Pierre north of that lake, on to Lake Wallace, and that this thread is about equidistant, from the banks on each side.
The stream on its way south flows in one regular channel, embracing small islands in* its course, until it reaches the mouth of the-lower stream before named, where its waters unite in one stream; one side of it washing the eastern shore of one parish, and the-other the other shore. The dividing line, however, of these two parishes, is the thread of the stream.
*125 The map of Williams’ survey shows painstaking care. None the less, we have felt convinced that it cannot be followed with any degree of certainty. He testified that part of the calls' in the different acts were meaningless. We agree with him in this respect, and find solution of the difference only in following a water course dividing the two parishes, as described by L. H. Bell, survey- or, in map of survey and proces verbal annexed, identified by the letter “B,” made January 1, 1906.
The judge of the district court followed that line. We think his judgment should be affirmed, and the last survey approved.
In following a water boundary between the two parishes, the thread of the stream is the line in this case.
For reasons assigned, the judgment appealed from is amended, by approving and adopting the Bell survey. As amended, the judgment is affirmed, at costs of plaintiff and defendant.