(58 South. 137.)

No. 19,219.

PARISH OF BOSSIER v. PARISH OF BIENVILLE.

(March 25, 1912.)

*(Syllabus by the Court.)*

COUNTIES (§ 7*) — PARISHES — BOUNDARIES — WATER COURSES.

Where a water course is made the boundary between two parishes, the presumption is that the thread of the stream was intended as the dividing line. Meander lines cannot be accepted as determining the water lines of a lake or stream.

[Ed. Note.—For other cases, see Counties. Cent. Dig. § 3; Dec. Dig. § 7.*]

Appeal from Third Judicial District Court, Parish of Bienville; Benjamin P. Edwards, Judge.

Suit by the Parish of Bossier against the Parish of Bienville. Judgment for plaintiff, and defendant appeals. Affirmed.

J. Rush Wimberly, for appellant. Pugh & Fullilove and Claude B. Prothro, for appellee.

LAND, J. This is a suit to fix the true boundary line between the parish of Bossier and the parish of Bienville. It is conceded that the line of division is the east boundary assigned to the parish of Bossier by Act No. 33, p. 17, of 1843, as follows, to wit:

"Starting at the mouth of Loggy bayou, on the western bank of said bayou, then following the shore of said bayou to Lake Bisteneau; thence up along the shore of said lake to Bayou Dorcheat; thence along the shore of said bayou to the line between the state of Arkansas and Louisiana."

The controversy hinges on the construction to be given to the clause, "thence up along the shore of said lake to Bayou Dorcheat." Plaintiff contends that the clause refers to the main channel of Lake Bisteneau. Defendant contends that the clause refers to the high-water mark of the lake as it existed in 1843. The judge a quo adopted the theory of the plaintiff, and rendered judgment accordingly. Defendant has appealed.

Before the institution of this suit, each parish appointed a surveyor to run the line in controversy, as required by the statute. These surveyors conjointly ran two boundary lines. Defendant's surveyor reported in favor of the range line, but on the trial admitted that the selection of that line was a mistake. So there is but one survey before the court. The contention of defendant, if correct, would require the remanding of the cause to fix the western shore of Lake Bisteneau as it existed in 1843. The suggestion that meander lines can be used to determine the water boundary in dispute is without merit. In Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. 124, 44 L. Ed. 171, the court said:

"It is urged that the fact that a meander line was run amounts to a determination by the land department that the surveyed fractional sections bordered upon a body of water. But there is no such magic in a meander line. All that can be said about it is that it is an irregular line which bounds a body of land, beyond which there may be found forest, prairie, land or water, government or Indian reservations."

Lake Bisteneau was created by overflows from Red river, caused in part by raft formations in the channel of that stream. The volume of Lake Bisteneau in any given year or season depended largely on the stage of water in Red river. The lake was fed by the overflows of that stream, and drained into it in seasons of low water. Under such conditions, the water line of the lake, in seasons of flood, might reach the hills on either side, and in seasons of drought might recede indefinitely. In 1843, the lawmaker, intending to give the new parish of Bossier a water boundary, from the Arkansas line to Red river, selected Bayou Dorcheat, Lake Bisteneau, and Loggy bayou. The three bodies of water had well-defined channels, and were in fact parts of

the same water course. The same word "shore" is applied to the bayous and the lake, and the words "bank" and "shore" are both used in reference to Loggy bayou. The channels of the three streams ran in the same general direction, and the words "up along" indicate a continuation of the same course. There is no good reason for supposing that the lawmaker in fixing the water boundary arbitrarily abandoned the northerly course and diverged at right angles to the west for several miles for the purpose of following the uncertain sinuosities of the shores of the lake. We can perceive no legislative motive or purpose for the exclusion of that part of the lake west of the main channel from the territory of the new parish of Bossier. The presumption is that the thread of the main channel was intended as the boundary line. See Parish of Red River v. Parish of Caddo, 118 La. 938, 43 South. 556; Parish of Caddo v. Parish of De Soto, 119 La. 120, 43 South. 978.

Judgment affirmed.