SIMON, Justice.
Instituted as a possessory action by plaintiffs[1] against defendants,[2] the matter is before us on writs of certiorari, prohibition and mandamus to review the ruling of the Fourteenth Judicial District Court for the Parish of Cameron.
Plaintiffs allege that they are the title owners of property, therein described in detail, containing approximately 9,011 *662 acres located within Township 13, Range 3 West, Cameron Parish, commonly ’known as the Lake Arthur Hunting Club property. They assert their actual, physical and corporeal possession for a period exceeding ten years; that the defendants entered upon a portion of plaintiffs’ property, partially constructed a fence across a given area with the avowed intention of completing their encroachments and to thereby dispossess plaintiffs and deprive them of the use and benefit of the area so ■enclosed. Accordingly, plaintiffs sought an injunction prohibiting the defendants from committing any further acts of trespass and to have their possession as title owners maintained and quieted.
The trial court issued a restraining order as prayed for and ruled the defendants to show cause why a preliminary injunction should not be issued. On the return day of the rule, defendants filed exceptions to the jurisdiction of the court ratione personae, averring that the defendants were non-residents of Cameron Parish, and ratione materiae, averring that the lines within the disputed area were located in Vermilion Parish and outside the territorial jurisdiction of the court of Cameron Parish.
Upon a trial of the exceptions, the lower court maintained the pleas to the jurisdiction ratione materiae, recalled, vacated and set aside'the rule -nisi, and dismissed' the suit, from which ruling, plaintiffs' applied for and obtained the writs herein granted.
Defendants predicate their exceptions on a survey which had been made by Messrs. Hayne and Lipscomb, engineers and surveyors, pursuant to the provisions of Act 232 of 1934, R.S. 50:121-50:128,'and, accordingly, contend that the lines and boundaries thus established, coexistent with the approval thereof by the Register of the State Land Office, is conclusive and binding on all parties to be affected and upon every court, other than the prescribed right to resort to the specific remedy granted by the Act; that said lines and boundaries so established are conclusive, even though they may affect the then existing and established parish boundary lines, and irrespective of the fact that, by such relocation, the territorial jurisdiction of the court of Cameron Parish is adversely affected. . -
Upon the filing by defendants of the survey relied on in connection with the exceptions, plaintiffs filed- a plea attacking the constitutionality of the statute, supra, and therein set forth that its provisions cannot divest the Parish of Cameron of its jurisdiction over an area within its recognized territorial limits, and which had been publicly accepted as such from the date of its creation. Act 102 of 1870. They also urge that, should a contrary view be .entertained, the statute upon which the survey rests is unconstitutional, being a blanket delegation of accepted judicial functions to an officer of our executive- department of government, namely, the power *664 and authority of determining the limits of property rights, and, more striking, the ascertaining and locating of boundaries between adjoining parishes, thereby clashing with existing laws governing the method and procedure to be observed in effecting changes of existing boundaries between parishes, all in violation of Article 2, Sections 1 and 2, and Article 7, Section 1, of the LSA-Constitution.
Plaintiffs also contend that, since Act 232 of 1934 specifically declares that surveys made thereunder shall be “conclusive evidence of the correctness thereof” and “binding on all parties” in any court, and which cannot be “set aside * * * except in a direct action brought for that purpose on the ground of fraud or gross error in the making of such survey”, R.S. 50:128, it is a denial of due process and the equal protection of the laws, in violation of Article 1, Section 6, and Article 1, Section 2, of the Constitution of Louisiana.
In the alternative, plaintiffs attacked the survey, challenging its legality on the ground of gross irregularities and errors and thus not entitled to recognition.
During the trial of the rule, plaintiffs, attempted to present evidence showing that the land in the disputed area lying east of the range line established by said survey, and therein declared to be within the territorial limits of Vermilion Parish, was actually within and had been consistently recognized and accepted as being within the territorial limits of Cameron Parish by landowners, parish officials and agencies, the assessment and collection of taxes, etc. They also attempted to prove alleged irregularities and errors in said survey, to show that the true boundary between the parishes of Vermilion and Cameron had not been actually placed and defined on the ground.
The trial court in sustaining the objection of defendants’ counsel, excluded the evidence, and held: (1) That the survey was conclusively binding upon it and that the lines and courses so established therein could not be questioned in this proceeding; (2) that the survey having conclusively fixed the location of the disputed area within the territorial limits of the Parish of Vermilion, the District Court of the Parish of Cameron was, therefore, without jurisdiction ratione materiae; and (3) that Act 232 of 1934 was constitutional.
The property which plaintiffs claim they possess under title comprises Sections 24, 25 and 36 of Township 13 South, Range 3 West, Cameron Parish. Defendants claim the opposite sections in Township 13 South, Range 2 West, Vermilion Parish. Accordingly, the boundary between the two parishes is the range line which separates Range 3 in Cameron Parish and Range 2 in Vermilion Parish, and which *666 was so declared when the Parish of Cameron was created by Act 102 of 1870.[3]
Pursuant to Act 232 of 1934, R.S. 50:121-50:128, inclusive, on September 11, 1944, defendant Stanolind Oil and Gas Company applied to the Register of the State Land Office for an order directing a survey and location of the line separating Range 2 and Range 3. The Register thereupon appointed H. M. Hayne and John Lipscomb, registered surveyors of this State, to make a survey of the sections in Township 13 North, Range 2 West. It may be noted that Hayne and Lipscomb were the regularly retained surveyors and engineers of defendant, and had been their agents and representatives in their mineral operations for many years. On September 11, 1944, the Register of the State Land 'Office duly notified the police juries of ■'Cameron and Vermilion parishes, respectively, that, in compliance with the petition of an interested landowner, a survey of township and section lines specified therein would be made, and which necessarily included certain of defendants’ lands. It is significant that it specifically declared therein that all the township and section lines which were ordered to he surveyed were located in Vermilion Parish. It is equally significant that, though the governing authorities of Cameron Parish were so notified, no township or sectional lines within their existing territorial limits were to be affected or included within the proposed survey. It also appears that this survey was approved by the Register of the State Land Office on January 15, 1947, and recorded in the office of the Clerk of Court of Cameron Parish on January 22, 1952, or about five years subsequent to the completion and approval of the work.
The procés verbal and plat of survey placed the range line, or the boundary line of the said parishes, about 1100 feet west of the then recognized range line separating both parishes, and as a result of which plaintiffs’ property, located east thereof, fell within the territorial limits of Vermilion Parish. It was upon this new line that defendants are alleged to have committed the trespass complained of.
It is the contention of plaintiffs that this survey constituted a change in the recognized boundary line between both parishes and that in so doing ignored and disregarded the provisions of Act 40 of 1855 (now R.S. 50:221-50:224). Plaintiffs further contend that Act 232 of 1934 was never intended by the Legislature to change, modify, alter or affect parish boundaries, and that the only statute applicable in that respect is that of Act 40 of 1855, R.S. 50:221-50:224. Adversely, defendants contend that the survey made under the authority of Act 232 of 1934 did not purport to, *668 'nor did it, fix the parish boundary, but merely located and established on the ground the range line separating Range 2 West in Vermilion Parish and Range 3 West in Cameron Parish.
Act 232 of 1934, under which the survey in question was made, authorizes the Register of the State Land Office to cause surveys and resurveys to be made of range, township and section lines where the lines were never actually established; it further provides for the employment, by the Register of the State Land Office, of one or more competent surveyors to perform the work. The Act unequivocally declares that any individual owning land in any township or section thereof may petition the Register of the State Land Office to have surveys made. Upon receipt of such application it becomes the mandatory duty of the Register to comply with the landowner’s petition without delay, after giving written notice to the other record owners of land in the area. The field notes and mat or plat of the survey are required to be filed with the Register of the State Land Office and when approved become the official survey of the township or sections thereof; and the Land Office is called upon to file a certified copy thereof with the clerk of court and ex officio recorder of the parish in which the area covered by the survey is situated. The Act then declares that all such surveys thus approved are binding upon all parties and are “conclusive evidence of the correctness thereof” in any court and not subject to question, and cannot be “set aside” by any court other than “in a direct action brought for that purpose on the ground of fraud or gross error in the making of the survey”. R.S. 50:128. The Act further vests exclusive power and authority in the executive department of the State to make and correct surveys and, once approved by the Register of the State Land Office, declares that “no court shall alter or amend in any way any part of an approved survey or resurvey or the plat thereof”.
Act 40 of 1855, now R.S. 50:221-50 :Z24, prescribes the method of procedure in the ascertainment and establishing of boundary lines between adjoining parishes. Its provisions call for the adoption of an ordinance by the governing authorities to that effect. Service of a copy of the ordinance is required on the governing authority of the adjoining parish, together with notice, at least six months in advance, of the time and place of starting the running of the lines. It further declares that whenever a boundary line shall have been thus ascertained, due return of the survey must be made to the presiding officer of the governing authority of each parish, and which shall be filed and preserved as such.
The first question to which we shall direct ourselves involves the construction to be placed on Act 232 of 1934 and the purpose and intent of the Legislature in its enactment.
*670 The Legislature, in adopting Act 182 of 1912, authorized police juries to resurvey and re-establish range, township and sectional lines and to employ competent surveyors for that purpose, Section 1. It further required the approval of such surveys by the police juries, and, once so approved, became the official surveys of the township and was conclusive of its correctness, unless set aside in a direct action on the ground of fraud or gross error, Section 6. It was thereafter expressly repealed by Act 232 of 1934, and the pertinent provisions of the latter statute are substantially the same as those contained in the former, save in one instance, i. e., the substitution of the Register of the State Land Office in lieu of police juries.
It is interesting to note that in 1946 the Legislature, by Act 340, R.S. 50:151-50:157, substantially re-enacted Act 182 of 1912. The Act of 1946 again vested authority in parish police juries to have surveys and resurveys made as affecting range, township and sectional lines and significantly declared therein that such surveys or resurveys would not affect or be binding upon the parishes, insofar as their respective boundaries were concerned, without the concurrence and participation by the governing authorities of the parishes themselves, R.S. 50:157, section 5b.
 The rights granted to private individuals by Act 232 of 1934 are exclusive. The language used in its provisions does not name parishes, expressly or otherwise. None of its provisions make mention of parish boundaries nor bring within its sphere the existing Tights of parishes as to their respective boundary lines.
To hold that the statute vests authority in the Register of the State Land Office to order surveys which would ultimately define, relocate or change parish boundaries, is to do violence to its letter, purpose and clear intent. To hold otherwise would constitute a denial of the statutory rights of parishes in all matters affecting their respective boundaries, and which are expressly safeguarded by Act 40 of 1855.
We find support in the view we have reached, in that the Legislature in enacting Act 340 of 1946, supra, specifically declared that the relocating or establishment of range, township and sectional lines by police juries, would not be binding upon the parishes in respect to parish boundaries, unless their concurrence and participation is first obtained.
Act 40 of 1855 prescribes the sole method of ascertaining and defining boundary lines between adjoining parishes, while, on the other hand, Act 232 of 1934 prescribes the method of establishing or relocating range, township and section lines as affecting property rights of landowners. The provisions of the latter statute cannot be invoked to circumvent or overreach the positive mandate of the former statute and thereby bring about a change or relocation of parish boundaries. Both statutes were *672 enacted for the evident purpose of accomplishing two separate and distinct objectives. One cannot be held to supercede the other, and both are exclusive in that respect, save the rights granted to police juries in respect to their respective boundaries, as is provided by Act 340 of 1946. We hold this to be conclusive.
It is a well-accepted principle, established uniformly by our jurisprudence, that all statutory provisions are to be given effect whenever possible; and a fair and reasonable interpretation, in reconciling seeming conflicts, must be given.. We have often held that where two statutes are found to relate to the subject, at the same legislative session, a strong presumption exists against implied repeal. Rather, they should be construed together, if possible, and. by reconciling them, give effect to each. Chappuis v. Reggie, 222 La. 35, 62 So.2d 92; Babineaux v. Lacobie, 222 La. 45, 62 So.2d 95; State ex rel. Fudickar v. Heard, 223 La. 127, 65 So.2d 112; Guillot v. Nunez, 225 La. 301, 72 So.2d 513.
Both statutes, Act 40 of 1855 and Act 232 of 1934, were bodily incorporated, adopted and became part of our LSA-Revised Statutes. In their respective spheres, they merit and are entitled, in the eyes of the law, to equal dignity. In State ex rel. Fudickar v. Heard, supra [223 La. 127, 65 So.2d 114], we held:
' “ * * * the Revised Statutes constitute a single .'act of the Legislature, adopted as a whole; different sections should be regarded not. as separate acts, but as simultaneous expressions of the legislative will, and all provisions should be construed together and reconciled whenever possible. In adopting the Revised Statutes of 1950, the Legislature incorporated both * * *, giving equal dignity to each; we must take them as written, and not search through the history of the acts carried into the Revised Statutes for defects, when a reading of the sections, disassociated from their history, presents no insuperable difficulty of construction. ‡ * * 3t
We have consistently held that, where the boundary lines of adjoining parishes have been previously defined by statute, though never established by actual survey on the ground, and where issue arose between two parishes as to the true location of the boundary, the provisions of Act ■40 of 1855 were all-exclusive to the extent that the procedure outlined therein must first be resorted to and be exhausted as a remedy before recourse can be had in the courts. Parish of Caddo v. Parish of De Soto, 114 La. 366, 38 So. 273; Parish of Caddo v. Parish of De Soto, 119 La. 120; 43 So. 978; Parish of Red River v. Parish of De Soto, 119 La. 992, 44 So. 822; Parish of Caddo v. Parish of Bossier, 164 La, 378, 113 So. 882; Parish of Lafourche v. Parish of Jefferson, 206 La. 615, 19 So.2d *674 328; St. Martin Parish Police Jury v. Iberville Police Jury, 212 La. 886, 33 So.2d 671.
Whenever an issue arose between adjoining parishes over the location of theif statutory boundary lines and which had never been defined on the ground; or, where there arose a contest between landowners adjoining said boundary line, due to an uncertainty as to which court should entertain jurisdiction thereof, we have consistently held that the consideration and acceptance of landowners in that area adjoining the boundary line, and that of parish officials and official agencies, including proof of the levying and collection of taxes, was admissible proof, and that the judge before whom the suit has been originally instituted should hear and consider all relevant facts for the purpose of determining the extent of the territorial jurisdiction over which he presides. Our jurisprudence in that respect is founded on the maxim “L’erreur commune fait le droit”.
In the case of State v. Malone, 134 La. 779, 64 So. 711, 713, we held:
“A question of boundary is the same whether raised in a criminal or civil suit. Where the boundary between two parishes has never been surveyed and established by a conjoint survey as provided by section 2624 of the Revised Statutes of 1870, and a certain section had been treated by the parochial authorities and the owners as lying wholly in one of the parishes, this court applied the maxim, ‘Communis error feeit jus.’ See Booksh v. Wilbert, 115 La. [351] 355, 39 So. 9. In Labarre v. Burton Co., 126 La. [982] 990, 53 So. [113] 116, this court said:
“ ‘It is not absolutely certain in which parish the land in controversy is.’ The preponderance of evidence seems to point that it is in Assumption, and ‘doubtless these lines * * * will be located contradictorily with the authorities of these parishes. Until then each case that may arise * * * in the somewhat free zone will have to be decided according to the preponderance of’ evidence ‘subject to future lines, when, or if ever, established.’ ”
State v. Texas Co., 211 La. 326 at page 341, 30 So.2d 107, 112:
“ * * * It is the well-established law of this State that, where a boundary between two parishes has never been surveyed and established by conjoint survey and a certain section has been treated by parochial authorities and the owners as lying wholly within one of the parishes, the Court will apply the maxim ‘L’erreur commune fait le droit’. See Cumming v. Boissatt, 2 La.Ann. 794; * * ”
The case of Commercial Bank v. Meaux, La.App., 158 So. 688, 690, presented the location of a boundary between the parishes of Vermilion and Lafayette. The defend *676 ant excepted to the jurisdiction, averring that the property was in the Parish of Lafayette. After the suit was filed the Parish of Vermilion proceeded under section 2624 of the Revised Statutes of 1870, formerly Act 40 of 1855 and now R.S. 50:221-50:224, to have the boundary line between the two parishes established. Though notified, the Parish of Lafayette did not participate therein. The survey returned the property as being in the Parisn of Vermilion, which was rejected by the court in passing on the jurisdictional question before it. The court did not sustain the plea to the jurisdiction but proceeded on the assumption that since each parish had apparent color of right, the suit could be brought in either parish and that the survey so made was not binding on the Parish of Lafayette. In determining whether one or both parishes enjoyed the right of jurisdiction, the court received evidence as to which of the two parishes the inhabitants along the parish boundary considered the property to belong. In the cited case the court stated:
“ * * * But due to the fact that there had never been any boundary line established between the parishes as provided by law, the rights of the parties do not depend on this line recent-' ly run for the purposes stated, but must be judged of according to the common understanding which had existed on the subject for the last 30 or 40 years immediately preceding the suit.”
We, therefore, conclude that until such time as the boundary line separating the Parish of Cameron from the Parish of Vermilion has been fixed on the ground in accordance with our law as expressed in Act 40 of 1855 (now R.S. 50:221-50:224, the Fourteenth Judicial District Court for the Parish of Cameron is vested with jurisdiction over the disputed area of which plaintiffs seek to have their possession maintained and quieted and the respective property rights of the litigants judicially determined.
We conclude that the learned trial judge was in error in denying jurisdiction over this cause, and, accordingly, his ruling is' set aside, annulled and voided; and the Fourteenth Judicial District Court for the Parish of Cameron is hereby ordered to reinstate its original restraining order and its rule to show cause why a preliminary injunction should not issue in this matter; and to further proceed with the trial of this cause according to law.
Reversed.

. Emily Glassell Comegys; Lillian Glassell Crichton; Alfred C. Glassell, Jr.; Charles Stringfellow, Jr.; Joanna Westley Lee and Janie Curry Lee, (minors, represented by First National Bank of Shreveport, Louisiana, their duly authorized tutor); Alfred C. Glassell; Raymond J. O’Brien; Patricia Ann O’Brien; Mary Cumalee O'Brien Long; and Raymond J. O’Brien, Jr.

. Stanolind Oil and Gas Company, William E. Merriman and John Gaspore.

. « * * * thence east on said township line to the range line between ranges numbers two and three (2 and 3) West, thence south on said range line to the Gulf of Mexico, * * Section 2, ' Act 102 of 1870.