HOOD, Judge
(dissents and assigns written reasons).
I cannot agree with the conclusions reached by the majority in this case. I realize, as did the majority, that any decision which might be rendered on the issues presented here will result in some inequities. In construing statutes, however, the primary object is to ascertain, and if possible give effect to, the intention and purpose of the legislature as expressed in those statutes. Fruge v. Muffoletto, La., 137 So.2d 336, decided by the Louisiana Supreme Court. If inequities result from such a construction then the matter of correcting them addresses itself to the legislature rather than to the courts. In this case the majority opinion places an interpretation on the laws here being considered which in my opinion does not give effect to the intention and purpose of the legislature as expressed in those statutes.
The majority states that this case involves an interpretation of LSA-R.S. 17 :- 52, which was quoted in the opinion which they rendered. I think it involves an interpretation not only of that section of the Revised Statutes, but also an interpretation of Act 39 of 1946 and the amendment to Article 12, Section 15, of the Louisiana Constitution which was adopted in 1946, LSA. My conscientious colleagues who constitute the majority have concluded that the second paragraph of LSA-R.S. 17:52 is applicable, and accordingly they have held that the membership of the Calcasieu Parish School Board must be increased to include six members from Ward 3, instead of one. In my opinion they have failed to give effect to the 1946 act and to the constitutional amendment adopted that year, and that if that act and that constitutional amendment had been given the effect which I think was intended then they would have been compelled to conclude that paragraph three of LSA-R.S. 17:52 continues to apply, as it has in the past, and that there can be only one member of the Calcasieu Parish School Board from Ward 3, until the legislature sees fit to change the law.
Also, I think the majority erred in holding that the important issue of “when and by whom the additional school board members are to be elected” is beyond the relief requested by plaintiff. That issue is so interrelated with the question of how many members from Ward 3 are to be on the Parish School Board, that it is essential *44 for it to be resolved before any real effect can be given to the remaining portion of the judgment. If it is not determined in the “declaratory judgment” being rendered in this proceeding, then it will be necessary for additional litigation to be instituted to obtain a clarification of the very judgment which is being rendered here.
Article 17 of the LSA-Civil Code provides that “Laws in pari materia, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another.” Article 18 of the Code provides that “The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it or the cause which induced the legislature to enact it.” (Emphasis added.)
The jurisprudence of this State also has been established to the effect that all statutory provisions are to be given effect whenever possible, and that a fair and reasonable interpretation in reconciling seeming conflicts must be given. Chappuis v. Reggie, 222 La. 35, 62 So.2d 92; Comegys v. Stanolind Oil & Gas Company, 227 La. 657, 80 So.2d 110 and Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111.
For a proper interpretation of the statutes which are the subject of this action for a declaratory judgment, I think it is necessary to consider laws in pari materia, to construe all laws upon the same subject matter with reference to each other, to examine into the reason and spirit of those laws or the cause which induced the legislature to enact them, and to give to such laws a fair and reasonable interpretation so as to reconcile seeming conflicts, if possible.
As pointed out by the majority, a separate school system for the City of Lake Charles was created by Act 90 of 1906, and a City School Board was established as its governing authority. Since the enactment of that statute, all public schools in the area which was then included in the corporate limits of the City of Lake Charles have been under the exclusive control and jurisdiction of the City School Board. The law provides that each member of the City School Board “shall be a duly qualified elector of said municipality.”
By Act 236 of 1914, the legislature amended Section one of the 1906 act, to include the following significant provision:
“The electors residing in the City of Lake Charles shall be ineligible to serve as members of the parish board of directors of the public schools of Calcasieu Parish, Louisiana, and to vote for members of said body.”
The above quoted provision of Act 236 of 1914, which amends the 1906 act, has never been repealed, and it is still the law of this State. Since 1914, therefore, the law has provided that a person could not be a member of the City School Board, or vote for a member of that board, unless he was an elector residing in the city, and also that an elector residing in the city could not serve as a member of the Parish School Board, or vote for a member of that board.
By Act 39 of 1946 the legislature also amended Section 4 of the 1906 act, by adding a provision which reads as follows:
“Provided, further, that the jurisdiction of the school board for the City of Lake Charles, shall include only the territory within the corporate limits of said City, as of January 1st, 1946, and that said jurisdiction shall not be affected by any extension or enlargement of the corporate limits of the City of Lake Charles.”
Also, in 1946, Section 15 of Article 12 of the Constitution, which relates to the sources and management of Parish School Funds, was amended to add the following provision:
“That whenever the limits of the City of Lake Charles are extended so as to include any property theretofore *45 subject to taxation for parish school purposes, the parish Assessor shall continue to extend upon the tax rolls all taxes levied for parish school purposes against the property included in any such extension of the city limits, as though such property had not been included with the limits of the City of Lake Charles, and the Tax Collector for such parish shall collect such taxes and remit the same in full to the Parish School Board in the manner prescribed by law.” (Emphasis added.)
The above quoted amendment to Section 15, Article 12, of the Constitution was approved by the electors on November 5, 1946. By referring to the opinion of the Supreme Court in Barbe v. City of Lake Charles, 216 La. 871, 45 So.2d 62, it appears that on November 8, 1946, or just three days after the 1946 constitutional amendment was approved, the City Council of the City of Lake Charles adopted an ordinance greatly enlarging the corporate limits of the city. It is obvious from the record, from the provisions of the statutes and from the jurisprudence that Act 39 of 1946 was adopted, and the 1946 amendment to Section 15, Article 12, of the Constitution was approved, as measures incidental to the proposed action of the City to extend its corporate limits.
It seems to me that by enacting Act 39 of 1946, and proposing the 1946 amendment to Section 15 of Article 12 of the Constitution, the legislature clearly intended to provide that any. extension of the corporate limits of the City of Lake Charles would have no effect at all upon either the City school system or the Parish school system. Using the language suggested by counsel for defendants, I think the legislature in 1946 intended to “freeze” the corporate limits of the City of Lake Charles as they were on January 1, 1946, insofar as both the City school system and the Parish school system -were concerned.
There are a number of circumstances which cause me to place that interpretation on the 1946 act and constitutional amendment. One is the fact that the legislature did not see fit to repeal, amend or change Act 236 of 1946 (amending and re-enacting Section one of Act 90 of 1906) which provides that electors residing in the City of Lake Charles shall be ineligible to serve as members of the Calcasieu Parish School Board, or to vote for members of that body. If the purpose and intent of the 1946 legislation was as I interpret it, that is to provide that any subsequent extension of the corporate limits of the city would have no effect on either of these school systems, including the membership of the school boards, then there was no need or occasion to amend the 1914 act. On the other hand, if the majority opinion is correct, to the effect that the legislature intended that the later extension of the city limits does alter the composition of the Calcasieu Parish School Board, then it seems to me that the following additional, and I think untenable, conclusions are forced upon the majority: First, under Section one of Act 90 of 1906, a qualified elector of the newly annexed area (which is under the exclusive jurisdiction of the Parish School Board) may serve as a member of the City School Board, and may vote for members of that board, although he cannot send his children to city schools and he pays no taxes for those schools. Second, under the same section of Act 90 of 1906, as amended by Act 236 of 1914, an elector who resides in the newly annexed area of the City of Lake Charles would be ineligible to serve as a member of the Calcasieu Parish School Board, or to vote for members of that board, although he is under the exclusive jurisdiction of the Parish School Board and is subject to taxation for parish school purposes. I cannot be convinced that the legislature intended any such results. Yet, if the majority opinion remains the established jurisprudence of this State, then in the subsequent litigation which I think is bound to follow the courts will be compelled either to conclude that the legislature intended that these unjust results were to take place, *46 or the courts will have to re-write or amend the 1906 and the 1914 acts, a function which should be left to the legislature. I think the legislature in 1946 intended that the proposed subsequent extension of the corporate limits of the city, with which proposal the legislature certainly was aware, would not affect either school system in any way.
A second circumstance which causes me to disagree with my colleagues is the fact that the public officials charged with the responsibility of administering the law have construed it, before and since 1946, as calling for one representative on the Calcasieu Parish School Board from Ward 3. That has been the practical construction placed on the law by public officials and by the people of Calcasieu Parish since the corporate limits of the city were extended almost 16 years ago. In Roberts v. City of Baton Rouge, supra, the Supreme Court said:
“Further, where (and of course only where) the construction or application of a statute is doubtful, great weight in the judicial interpretation thereof should be given to the construction consistently given a statute by those charged with applying it administratively. Hester v. Louisiana Tax Commission, 227 La. 1022, 81 So.2d 381; Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223; Jackson v. Coxe, 208 La. 715, 23 So.2d 312; State v. Standard Oil Co., 190 La. 338, 182 So. 531.***."
Also, in State ex rel. Guillot v. Central Bank & Trust Co., 143 La. 1053, 79 So. 857, 859, the Supreme Court held that:
“ ‘The practical construction given to a doubtful statute by the public officers of the state, and acted upon by the people thereof, is to be considered; it is perhaps decisive in case of doubt. This is similar in effect to a course of judicial decisions. The Legislature is presumed to be cognisant of such construction, and after long continuance, without any legislation evincing its dissent, courts will consider themselves warranted in adopting that construction.’ Sutherland on Statutory Construction, par. 309.” (Emphasis added.)
The construction which I think should be placed on LSA-R.S. 17:52 has continued for many years not only without legislative dissent, but with obvious legislative consent, because as recently as 1960 the legislature re-enacted that section of the Revised Statutes without making a change in language insofar as it relates to the issue presented here. Act 539 of 1960.
A third circumstance which causes me to disagree with the majority is the fact that in 1946 the population of Ward 3 outside the corporate limits of the City of Lake Charles was not sufficient to warrant a conclusion that the legislature in 1946 intended that there should be a substantial increase in the number of representatives from that ward on the Parish School Board. The record does not show the population of Ward 3 in 1946, but it does show what it was in 1950 and its present estimated population. Assuming, however, that the population in 1946 was the same as it was in 1950, an assumption which is most favorable to plaintiff, I feel that the legislature that year would not have considered increasing the representation from Ward 3 on the Parish School Board to the extent which plaintiff urges here. A substantial part of plaintiff’s argument in this case has been to the effect that there has been a tremendous increase in the population of Ward 3 since 1946, and for that reason he argues that there should be a greater representation from that ward on the Parish School Board. I agree that the population has increased during the past few years and that Ward 3 is not adequately represented on the School Board, but it is not our function or prerogative to change or amend the law simply because there has been an increase in population. *47 I think we should construe or interpret the law as the legislature intended it at the time the legislation was enacted.
A fourth, and final, circumstance which convinces me that the majority has erred is the fact that I do not believe that the legislature intended that representation from Ward 3 on the Calcasieu Parish School Board should be based on the number of Police Jurors from that ward. The number of police jurors from Ward 3 of Calcasieu Parish is determined by the population of that ward, including the population of the City of Lake Charles. See LSA-R.S. 33:1222 and 1223. Section 15, of Article 12, of the Constitution provides that insofar as school funds are concerned “ * * * Monroe, in Ouachita Parish, and Lake Charles, in Calcasieii Parish, and Bogalusa, in Washington Parish, and no other, shall be regarded as, and treated upon the same basis and shall have the same authority in respect to this section as though they tvere separate parishes instead of municipalities.” As has already been pointed out, the City School Board has exclusive jurisdiction of all public schools within the old city limits, and Act 90 of 1906, as amended in 1914, provides that an elector residing in the City of Lake Charles shall be ineligible to serve as a member of the Parish School Board, or to vote for a member of that board. In view of these other laws, it seems illogical to me that the legislature would intend that the representation on the Calcasieu Parish School Board from Ward 3 should be based on a population count which includes the residents of the City of Lake Charles.
In my opinion, under the present law, Ward 3 is entitled to one representative on the Calcasieu Parish School Board. This representative must be a qualified elector of Ward 3, living outside the limits of the City of Lake Charles as they existed on January 1, 1946, and he shall be elected by the voters of that ward living and voting outside the limits of the city as those limits existed on January 1, 1946.
For the reasons herein assigned, I respectfully dissent from the majority opinion.