169 So.2d 903

Thomas W. **HALL**

v.

**J. W. (Bill) ROSTEET, in his capacity as President of the Police Jury of Calcasieu Parish, Louisiana.**

No. 47524.

Dec. 14, 1964.

Frank T. Salter, Jr., Dist. Atty., Henry L. Yelverton, Asst. Dist. Atty., for appellant.

John R. Stewart, Lake Charles, amicus curiae.

Larry A. Roach, Lloyd E. Hennigan, Jr., Philip J. Shaheen, Jr., Lake Charles, for appellee.

McCALEB, Justice.

This suit, seeking injunctive relief, was instituted by a property taxpayer of Calcasieu Parish to have J. W. Rosteet, acting in his capacity of President of the Police Jury of said parish, restrained from executing a lease to Louisiana Flyers, Inc., of the airfield located at Lake Charles, Louisiana, formerly known as Chennault Field.

After a hearing, the district judge granted a permanent injunction as prayed for and the defendant then appealed to the Court of Appeal, Third Circuit. The judges of that court, being closely divided as to the proper construction to be given to certain claimed conflicting statutory provisions and jurisprudential expressions, certified three questions of law for instructions from this Court to enable them to reach the correct decision in the matter.

Since answers to the certified questions (or, perhaps, one of them) will fully dispose of the issue, we think it expedient, instead of remanding the matter to the Court of Appeal for decision, to exercise the privilege accorded this Court by Section 25 of Article 7 of the Constitution to consider and determine the case as

though it had been directly appealed here. See Louisiana Wholesale Distributors Ass'n v. Rosenzweig, 214 La. 1, 36 So. 2d 403; Burton v. Lester, 227 La. 347, 79 So.2d 333 and other cases.

The Court of Appeal in its per curiam of certification has set forth the facts and the legal issues of the case with sparkling clarity. Hence, we herewith reinscribe much of that court's statement so that the legal questions presented may be appropriately answered:

"For a considerable period of time, the Calcasieu Police Jury, has operated an airport adjacent to Chennault Air Force Base. In connection therewith, the Police Jury has on several occasions granted leases, after private negotiation, to persons that have conducted various activities connected with flying.

"In 1962, the Police Jury, pursuant to LSA–R.S. 2:601 et seq., created an Airport Authority for the purpose of managing the new Lake Charles Municipal Airport, which was constructed to induce the United States to declare Chennault a permanent installation. Since that time, Chennault has been declared unnecessary, and the Calcasieu Parish Police Jury has two airports.

"Although the area subject to the jurisdiction of the Airport Authority includes the old airport, it has never exercised any powers over the old airport, and the police jury has continued over the years to lease facilities at it without advertising and competitive bids.

"Louisiana Flyers, Inc., primarily engaged in the business of agricultural aircraft service, has been operating from the 'old airport', under a year-to-year lease arrangement from the Calcasieu Police Jury, for the past seventeen and one-half years. In August of 1964, Louisiana Flyers, Inc., desiring a more permanent arrangement, began negotiations for a new lease. The Police Jury offered to lease to Louisiana Flyers, Inc. their desired facilities at the 'old airport,' consisting of 50 acres of land and improvements, including hangars, thereon, for the initial sum of $20,000 and $50 per acre per year for a primary term of ten years and two five-year options.

"At this juncture, plaintiff, Thomas W. Hall, a resident landowner and taxpayer of Calcasieu Parish, brought suit against J. W. Rosteet, acting in the capacity of President of the Calcasieu Police Jury, seeking to enjoin him from executing the lease to Louisiana Flyers, Inc., on the grounds that, inter alia, (1) the Police Jury

had divested itself of authority to grant such a lease by creating the Airport Authority, and (2) that the Police Jury did not comply with LSA–R.S. 41 :1211–41 :1217, requiring advertisement and competitive bidding, in granting the proposed lease. * * * ".

\* \* \* \* \* \*

"The principal question of law * * concerns the potential application in whole or in part of either or both of two statutes concerning the leasing of public lands, which contain provisions conflicting to some extent.

"On the one hand, plaintiff contends and the trial court held that applicable are the provisions LSA–R.S. 41 :1211 et seq., regulating generally the leasing of public lands, insofar as these provisions require competitive bidding. On the other hand, the defendant police jury contends that the Uniform Airports Law, LSA–R.S. 2 :131 et seq., exclusively governs the leasing of lands for airport or landing field purposes, which statute authorizes such leasing but is silent about any competitive bidding requirements ; and that LSA–R.S. 41 :1211 et seq. does not apply to leases such as the present.

"The general statute provides for leasing of public lands only after written application, advertisement, and competitive bidding, providing a detailed procedure for the execution of such leases. LSA–R.S. 41 :1213–1215. The provisions are applicable to the general authority granted to any political subdivision through its governing body to 'lease for trapping, grazing, hunting, agricultural, and (sic [1]) any other legitimate purposes whatsoever, other than for oil, gas, or other mineral purposes . and development, any lands . of which the lessor [i. e., the public body] has title, custody, or possession * * * '.

"Possibly pertinent restrictions on the general leasing power are that no lease shall cover a larger area than six hundred and forty acres, LSA–R.S. 41 :1216, and that no lease shall be for a term more than ten years or with a rental of less than twenty-five cents per acre, 'provided, however, that any person who leases such land and who within the ten-year term of the lease adds or contracts for permanent improvements to the land in the amount of not less than fifteen thousand dollars may, upon written notification to the lessor and upon a proper showing that such improvements have in fact been made or contracted for, lease such land for an additional period of not more than ten

---

1. The statute reads "or" and not "and".

years * * *', LSA–R.S. 41:1217A, subd. A. (It is specially provided that these ten-year term and minimum rental provisions 'shall not apply to any school district', LSA–R.S. 41:1217, subd. C.) It is further provided by LSA–R.S. 41:1220 that: 'It shall be unlawful for anyone to knowingly trespass upon the leased lands and thereon to trap, hunt, graze stock or engage in other agricultural pursuits * * *'.

"On the other hand, the Uniform Airports Law simply provides that local authorities which establish airports or landing fields or which set apart real property for such purposes may, LSA–R.S. 2:135(3): '(3) Lease for a term not exceeding twenty-five years such airports or landing fields to private parties for operation, or lease or assign for a term not exceeding twenty-five years to private parties for operation space, area, improvements, and equipment on such airports or landing fields, provided in each case that in so doing the public is not deprived of its rightful, equal, and uniform use thereof.'

"The police jury's view is that the leasing authority contained in the just-quoted LSA–R.S. 2:135(3) of the Uniform Airports Law (which is silent about and competitive bidding requirements) authorizes it to negotiate leases for airport purposes without compliance with the general purpose leasing statute, LSA–R.S. 41:1211 et seq. It argues that such unrestricted leasing power is needful authority fairly implied from the legislative grant of power with regard to the creation of airports, Stone v. Police Jury of Parish of Calcasieu, 226 La. 943, 77 So.2d 544, and that the acreage and term restrictions of the general leasing statute are clearly inconsistent with the airport leasing statute, indicating that the latter alone is the appropriate statutory regulation of the present lease. The further contention is made that the general leasing statute under its terms applies only to leases for purposes similar to trapping, grazing, hunting and agricultural purposes (and not to leases for airport or commercial purposes) because the statutory authority to 'lease for trapping, hunting, agricultural and (sic) other legitimate purposes whatsoever' should be interpreted according to the ejusdem generis rule * * * which view the police jury believes is implicitly if not explicitly supported by a statement and the holding in Gorham v. Mathieson Alkali Works, 210 La. 462, 27 So.2d 299. The police jury also points out that the trespass, acreage-restriction, and acreage-rental provisions of R.S. 41:1211 et seq. are

consistent with a legislative intention to regulate leasing of unimproved lands for agricultural, trapping, and similar purposes, but not with an intention to regulate leasing of buildings and improvements or of lands for airport and commercial and similar purposes.

"The plaintiff-appellee argues that, on the other hand, the general leasing provision by its specific terms regulates not only leases granted for agricultural, etc., purposes, but also for '*any other legitimate purposes whatsoever*, other than for oil, gas or other mineral purposes and development'. It is contended that the ejusdem generis rule is not a hard and fast rule and is only helpful where the true legislative intent cannot be discovered from the language of the statute itself (S. A. Harris Transfer and Storage, Inc. v. Louisiana Public Service Commission, 240 La. 1057 [1059], 127 So.2d 148, McHugh v. Placid Oil Co., 206 La. 511, 19 So.2d 211 [221]), whereas in the present case the legislature has clearly and unambiguously intended for the competitive leasing procedure to be followed in leases of public lands for '*any* other legitimate purposes *whatsoever, other than* for oil, gas or other mineral purposes.' Further, it is suggested that the specification that

*only* oil and gas leases are to be excepted from the provisions of the general leasing statute indicates that no other exceptions are intended, under the principle of 'expressio unius est exclusio alterius' (the expression of one thing is the exclusion of others), cf., State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656. Finally, it is contended that the airport leasing and the general leasing provisions of the Revised Statutes should be read as simultaneous expressions of the legislative will, so that the provisions of both should be given effect where not in conflict, Bartley, Incorporated v. Town of Westlake, 237 La. 413, 111 So.2d 328. Thus, it is suggested, although special provisions of the special airport statute as to term might be given effect insofar as in conflict with the general leasing's statute provision on the subject, 82 C.J.S. 'Statutes' § 347b, p. 720, nevertheless, there is no conflict between the special and the general statute as to the requirement of competitive bidding in the leasing procedure, so that such latter's statutes provisions should apply to accomplish the legislative purpose intended, which Your Honors stated was 'to give all persons a chance to bid on leases of the public lands, to prevent boards and other authorities from favoring one person over oth-

ers, and to produce to the various agencies of the State named therein larger revenues by requiring competitive bidding for the leases.' Ellis v. Acadia Parish School Board, 211 La. 29, 29 So.2d 461, 465. It is finally pointed out that competitive bidding for leases is not necessarily inconsistent with proper powers needful for operation of airports, cf., National Car Rental System v. City of New Orleans, La.App. 4 Cir., 160 So.2d 601."

█ After a consideration of the statutory provisions in contest in the light of the applicable authorities, we have no hesitancy in concluding that the trial judge was correct in enjoining the defendant from executing the proposed lease without first complying with that part of the general land leasing law of the State, R.S. 41:1214 and 1215, which prescribes for advertisement and competitive bidding as a condition precedent to the leasing of public lands.

█ At the outset, it is apt to point out that, in construing the sections of our Revised Statutes for legislative intent in cases where claims are made of conflict or am-

biguities between general and special provisions of legislation therein contained, every reasonable effort should be made to give effect, if possible, to all for " * * * the Revised Statutes constitute a single act of the Legislature, adopted as a whole; different sections should be regarded not as separate acts, but as simultaneous expressions of the legislative will, and all provisions should be construed together and reconciled whenever possible." State ex rel. Fudickar v. Heard, 223 La. 127, 65 So.2d 112, 114.[2]

█ We are not impressed with defendant's first contention that R.S. 41:1212 is inapplicable to the leasing of an airport because the doctrine of ejusdem generis confines its general provisions to the leasing of lands for purposes similar to the special leasing purposes named therein, i. e., trapping, grazing, hunting and agricultural. The doctrine of ejusdem generis, i. e., that general words, such as "other, etc." following an enumeration of particular classes or things should not be construed to their widest extent but are to be applied only to such classes or things of the same general kind as those specifically mentioned (see Black's Law Dictionary, 4th Ed. 1951, page 609), is not one of universal applica-

2. See also Chappuis v. Reggie, 222 La. 35, 62 So.2d 92; Babineaux v. Lacobie, 222 La. 45, 62 So.2d 95; Gandolfo v. Louisiana State Racing Commission, 227 La. 45, 78 So.2d 504; Comegys v. Stanolind Oil & Gas Co., 227 La. 657, 80 So. 2d 110; State ex rel. Le Blanc v. Democratic State Central Committee, 229 La. 556, 86 So.2d 192; Bartley, Inc. v. Town of Westlake, 237 La. 413, 111 So.2d 328 and Collector of Revenue v. Olvey, 238 La. 980, 117 So.2d 563.

tion and, as we stated in S. A. Harris Transfer & Storage, Inc. v. Louisiana Public Service Comm., 240 La. 1059, 127 So.2d 148, "Its value as a guide to ascertain legislative intent is limited to cases in which the true intent cannot be discovered from the language employed in the statute."

Here, we have no difficulty whatever in reaching the conclusion that the language contained in R.S. 41:1212 manifests a legislative intent to include all public land leases within the scope of its general provisions. For, after stating that public lands may be leased for "trapping, grazing, hunting, agricultural, or any other legitimate purposes whatsoever, * * *" the Legislature has provided a single exception, viz., "other than for oil, gas, or other mineral purposes and development, * * *". This exhibits a clear intent to include within the statutory provisions all leases of public lands for all purposes other than for the special purposes therein excluded.[3]

Since we find that the language of R.S. 41:1212 covers the leasing of all public lands other than those leased for purposes specially excepted therefrom, it would seem to follow that the provisions of R.S. 41:-1214 and 1215 are also applicable to the leasing of any land and equipment for special purposes under other sections of the Revised Statutes (such as the lease of an airfield under R.S. 2:135(3)), in the absence of an express permissive provision in the special law that such leases could be negotiated without advertisement and competitive bidding.

However, counsel for defendant proclaim that an intent to relieve the public body from the necessity of advertisement and competitive bidding for leasing purposes is implicit in the Uniform Airports Law. They say that this is evident in view of the circumstance that R.S. 2:135(3) is silent concerning any competitive bidding requirements and also because R.S. 2:131 et seq. contains no restrictions as to the amount of acreage which may be leased (whereas the public leasing law limits leases to 640 acres) and permits airfields to be leased for a term of 25 years, while the public leasing law limits the term of leases made under its provisions to 10 years.

---

3. Defendant has contended that this Court has indicated in Gorham v. Mathieson Alkali Works, 210 La. 462, 27 So.2d 299, that the maxim "ejusdem generis" was applicable to the language used in R.S. 41:1212. While it is true that there is a statement contained in that decision which might be thus construed as a limitation of the scope of the statute to the specific purposes mentioned therein, it was pure dictum. That case stands only for the proposition that the general leasing statute is not applicable to the leasing of water bottoms of the State by the Commissioner of Conservation for the purposes of extracting sand, shells and gravel because water bottoms are not lands within the intendment of R.S. 41:-1212.

These postulations are not well founded. We cannot see why the absence of provisions concerning competitive bidding for airport leases in the Uniform Airports Law furnishes a valid basis for a conclusion that it was the intent of the lawmaking body to exclude the leasing of airports from the requirements of competitive bidding provided by the general land leasing law, if, as we find, the leasing of airports is included within the provisions of R.S. 41:-1212. Nor does the fact that the Uniform Airports Law permits the leasing of an airport for a longer period than that authorized by the general leasing law—and the fact that it contains no restriction as to the acreage to be leased for airport purposes—provide a foundation for deducing that the provisions of the general leasing law respecting advertisement and competitive bidding are inapplicable to the leasing of airports—for, as we have pointed out above, it is our duty, in construing the Revised Statutes, to give effect to all of its provisions, if possible. In the performance of this task, we find nothing inconsistent in applying the advertising and competitive bidding requirements of the general law to the leasing of airports. On the contrary, this conforms with the legislative intent since we have concluded that airport leasing is covered by R.S. 41:1212 and the Uniform Airports Law is silent on the subject of advertising and competitive bidding. True, the provisions of the Uniform Airports Law as to the duration of an airport lease, and the acreage which may be leased, being inconsistent with those of the general land leasing law, must prevail over the general law to that extent since it deals with a special type of leasing. But, as stated, this affords no ground for not applying the other provisions of the general land leasing law which are not in conflict with the Uniform Airports Law.

For the reasons assigned, the judgment of the district court is affirmed.