Dear Mr. Accardo:
You have requested an opinion of the Attorney General's Office, in your capacity as Legal Advisor to the South Louisiana Port Commission (the "Commission") relative to a proposed lease with KM Iron, L.L.C. ("KMI"), a Delaware limited liability company. The Commission intends to issue approximately $50,000,000 dollars in tax-free bonds to acquire land and to construct a dock and loading facility on the Mississippi River in St. James Parish. The bonds will be amortized over twenty-five years and guaranteed by KMI providing Letters of Credit from its banks. The Commission and KMI will enter into a Handling and Operation Agreement which will contain a provision that KMI pay a sufficient sum for each ton of cargo handled by the facility to defray the cost of operations, maintenance, insurance, etc.
The land acquired with proceeds of the sale of the bonds will consist of the project site, the land adjacent thereto, upon which KMI will construct its plant, and other land to be leased by the Commission to third parties unaffiliated with KMI for purposes of creating an industrial park. The Commission will use its own funds to acquire approximately 17.5 acres of land which it will lease to KMI for its plant for the sum of One Dollar ($1.00) per year.
The Commission projects that KMI will ship approximately 2.7 million short tons of cargo, yearly. KMI will pay a sufficient charge for each ton of cargo crossing the wharf to allow the wharf to be properly operated, maintained and insured. KMI will build its plant, at a cost of approximately Two Hundred Million Dollars ($200,000,000), from its own funds and will employ one hundred seventy-five people. KMI further expects to expand its production to double its capacity if business warrants and, consequently, has been given the option to lease an additional fifteen (15) acres for One Dollar ($1.00) per year to expand its operations.
You raise the following issues for our resolution:
1. Does the Agreement between the Commission and KMI providing for a lease of 17.5 acres and the option for an additional acreage for One Dollar ($1.00) per year, each, constitute adequate consideration in view of the economic benefit that will accrue to the State and Parish as a result of the job opportunities and tax revenues which will be paid by KMI?
2. Is the prohibition contained in R.S. 38:2195
relative to hold harmless and indemnity clauses applicable to this transaction?
3. Is there any prohibition to the Commission stipulating that it will arbitrate any disputes arising under this Agreement?
Initially, it should be noted that the Commission constitutes a political subdivision of the state of Louisiana pursuant to Article VI, Sections 43 and 44(2) of the 1974 Louisiana Constitution. Board of Commissioners of the Portof New Orleans, et al. v.Louisiana Commission on Ethics for Public Employees,416 So.2d 231 (La.App. 1st Cir. 1982), Rehearing denied; and Attorney General Opinion Nos. 95-439, 93-389, 93-341, 87-31, 83-288 and 77-36.
As a political subdivision, it possesses those powers conferred by our state constitution and laws. There is no question that the funds appropriated to, and generated by the Commission, through the exercise of its consitutional and statutory powers and authority, constitute public funds, the expenditure of which is governed and controlled by pertinent constitutional and statutory provisions. Attorney General Opinion No. 95-439.
The rights and powers of the Commission are specifically designated in R.S. 34:2471 through 2477. Section 2473(E) specifically authorizes the Commission, through its executive director, to enter into leases with any and all companies interested in the transportation, storage, and shipping of goods and other products and for the use of the facilities of the Port.
Section 2474 authorizes the Commission, with the approval of the State Bond Commission, to incur debt for its lawful purposes and issue, in its name, negotiable bonds or notes therefor. R.S.39:991.1 further authorizes the Commission to issue revenue bonds for the purpose of constructing, acquiring or improving Port facilities.
The Commission's expenditure of public funds must be examined in light of Article VII, Section 14 of the Louisiana Constitution of 1974. It provides, in pertinent part, the following:
 "§ Section 14. (A) Prohibited Uses.
Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . . .
* * *
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
A very comprehensive analysis of the above Section, as it relates to the expenditure and/or use of public funds, was undertaken by this office in Attorney General Opinion No. 90-651. As noted therein, the constitutional norm for the lawful use of public funds and property is found in Section 14. As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds.
Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., the Commission), to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A).City of Port Allen v. Louisiana Risk Management,et al., 439 So.2d 399 (La. 1983) and Attorney General Opinion No. 90-651.
In City of Port Allen, the Supreme Court ruled:
 "The cases that do exist [under La. Const. Art. IV § 12 (1921)] hold primarily that this section is violated whenever the state or political subdivision seeks to give up something of value when it is under no legal obligation to do so. . . .
 * * *
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose they still may not
give away their assets to other political subdivisions, the United States Government, or public or private associations or corporations, or to individuals merely for a `public purpose'." (Emphasis added.)
The threshold requirement of the constitutional doctrine for distinguishing between invalid and lawful expenditures and transfers of public funds and property is the presence of a legal obligation or duty by the transferor to alienate said funds or property. See Beard-Poulan, Inc. v. Dept. of Highways,362 F. Supp. 547 (W.D. La. 1973) and Town of Brusly v. WestBaton Rouge Parish Police Jury, 283 So.2d 288 (La.App. 1st Cir. 1973).
This prerequisite is satisfied by the presence of avalid statute, ordinance, charter or contract. The vehicle by which the obligation is created may, nevertheless, be ultra vires or unconstitutional if it creates no binding legal obligation or if the obligation created is substantially inconsistent with, or beyond the scope of the Commission's authorized duties. Attorney General Opinion No. 90-651.
As noted above, the requirement of a legal duty is the threshold, but not the only predicate for the constitutionality of the expenditure. Second, the expenditure must also be for a public purpose. Third, the expenditure must create a public benefit proportionate to the cost (i.e., the amount expended). Attorney General Opinion Nos. 95-141, 93-787, 92-722, 92-127 and 90-651.
As can be seen from the above, the unequivocal prohibition established by Article VII, Section 14 constitutes one of the most enduring and formally consistent constitutional provisions in Louisiana law. Further, it has been consistently recognized and upheld by this office. Attorney General Opinion Nos. 95-141, 94-515, 93-787, 93-766, 93-665, 93-558, 92-494, 91-104, 90-652, 89-180 and 84-871.
The initial issue to be determined regarding the lease, in question, is whether a valid legal duty or obligation exists for the Commission to issue bonds and utilize the revenues generated therefrom for the purposes set forth in your request. As previously noted, R.S. 34:2473(E) and 39:991.1 empower the Commission to enter into the type of lease contract envisioned in your request and to issue revenue bonds for the purposes enumerated in your inquiry. Clearly, this statutory framework constitutes valid legislation and, consequently, the presence of a legal obligation or duty on the part of the Commission. Further, we find this obligation and/or duty to be substantially consistent and within the scope of the Commission's authorized duties. We turn now to the second prerequisite that the transaction be for a public purpose.
The issue of whether the stimulation of industrial development constitutes a public purpose was squarely addressed in Hebert v. Police Jury of West Baton Rouge, 200 So.2d 877
(La.App. 1st Cir. 1967), Writ refused. Therein, the Court held that R.S. 39:991, et seq., constituted legislation adopted in the furtherance of a public purpose, and in so holding, concluded:
 "The purpose of the lawmakers was and is to induce and stimulate industrial expansion in Louisiana . . . . As to public good or public purpose, it cannot be denied that this growth pattern has been stimulated by this cooperative state action, and that the continued growth pattern as well as the essential increase in prosperity of this State and of the general welfare of the people will depend to a considerable degree upon a healthy growing industrial complex, diversified in character, housed in modern up-to-date facilities, and geared to the technological advances of our time. The fact that these laws do not make any express reference to a public purpose cannot defeat the plain intention of the legislature to stimulate industrial development to give the economy of Louisiana a sound balance, and both from the standpoint of essential industrial inducement, as is expressly provided for by these laws, as well as from the standpoint of economic advantages, such public purpose is plainly implied. Actually and as the Courts of this as well as other states have held, in cases of this kind, there is a public purpose."
Similarly, in LeBlanc v. Police Jury of the Parish ofRapides, 188 So.2d 131 (La.App. 3rd Cir. 1966), Writ denied, the Court held:
 "The provisions contained in the statute anticipate the same purposes and generally are similar to the other laws of Louisiana governing development under the State's industrial inducement plan . . . which anticipate cooperation between the public authority and a sound private interest for the acquisition of sites and the construction of essential industrial improvements to be leased and/or sold to the private industry under terms to be worked out with this industry by negotiation so as to insure the full payment of the principal and interest of the indebtedness incurred by the public corporation, as well as the payment of all other operation and maintenance costs and expenses."
As previously noted, KMI will lease approximately 17.5 acres of riverfront property from the Commission on which it will construct its Hot Briquetted Iron plant. KMI further anticipates shipping 2.7 million short tons of cargo, annually, from which the Commission will realize loading fees sufficient in amount to adequately operate, maintain and insure a wharf capable of handling panamax vessels and river barges. KMI has also represented that it may expand its production to double its capacity if business so warrants.
Based on the above factual scenario, it is the opinion of this office that the lease, in question, clearly serves a public purpose. Having satisfied the second predicate for the constitutionality of the transaction, we now focus on the third and final requirement that the public benefit received by the Commission in entering this transaction is proportionate to the cost to be borne by the Commission.
As previously noted, the proposed Handling and Operation Agreement to be executed by KMI and the Commission stipulates that the KMI plant site property will be leased to KMI for One Dollar ($1.00) per annum, and other good and valuable consideration. Additionally, KMI has the option to lease adjacent lands for purposes of expansion for the same consideration. KMI will be obligated to provide Letters of Credit from its banks to guarantee the Revenue Bonds to be issued, and to pay a sufficient sum for each ton of cargo handled by the Commission to defray the cost of operations, maintenance, insurance, etc.
KMI is further obligated to construct a Two Hundred Million Dollar ($200,000,000), plant at its own expense, the operation of which will provide jobs to one hundred seventy-five people. In addition to these job opportunities, state and local government will realize additional tax receipts.
Based on the factual information presented herein, it is the opinion of this office that the benefits granted by the Commission to KMI as a result of this transaction, are not so disproportionate to the public gains to be realized by the Commission and this State so as to violate the constitutional provisions contained in Article VII, Section 14.
In answer to your second question, R.S. 38:2195 provides, in pertinent part, the following:
 "A. It is hereby declared that any provision contained in a public contract, other than a provision naming another as a co-insured or additional beneficiary in a contract of insurance which requires a public entity to assume liability for damages arising out of injuries or property damage to the contracting parties or to third parties caused by the negligence of anyone other than the public body, its employees, or agents, is contrary to the public policy of the state of Louisiana. Any and all such provisions in any and all public contracts issued on or after October 1, 1988, are null and void."
Section 2195 also contains exceptions to its applicability, none of which appear to be relevant to the transaction at hand.
R.S. 38:2211(A)(10) defines "public entity" to include a political subdivision of the state. Accordingly, it is the opinion of this office that the prohibition relative to hold harmless and indemnity provisions in Section 2195 are applicable to the Commission. We turn now to your third and final question relating to arbitration clauses.
R.S. 9:2778 and 38:2196 address the issue of arbitration clauses in public contracts. They provide:
"§ 2778. Public contracts; certain provisionsinvalid
 A. The legislature finds that with respect to public contracts involving the state or a political subdivision of the state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.
 B. The legislature hereby declares null, void, unenforceable, and against public policy, any provision in a contract, subcontract, or purchase order, as described in Subsection A, which either:
 (1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state.
 (2) Requires interpretation of the agreement according to the laws of another jurisdiction.
 C. The provisions of this Section shall apply to public contracts, as described in this Section, entered into on or after June 30, 1992.
Added by Acts 1992, No. 582, § 1, eff. June 30, 1992.
R.S. 38:2196. Public contracts; certain provisionsinvalid
 A. The legislature finds that, with respect to public contracts involving the state or a political subdivision of the state, when the work is to be done in this state, or the services are to be provided or the materials are to be supplied in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.
 B. The legislature hereby declares null and void and unenforceable as against public policy any provision in a public contract, as described in Subsection A, which requires either of the following:
 (1) That a suit or arbitration proceeding must be brought in a forum or jurisdiction outside of this state, instead of being pursued in accordance with the laws of this state governing such actions.
 (2) That the agreement must be interpreted according to the laws of another jurisdiction.
 C. The provisions of this Section apply to public contracts, as described in Subsection A, entered into on or after June 5, 1992.
 D. The governing authority of the state or a political subdivision may waive the prohibition of enforceability provision of this Section and comply with such contractual provisions upon a determination that to do so would be in the best interest of the state or political subdivision.
Added by Acts 1992, No. 582, § 1, eff. June 5, 1992."
For the same reasons espoused in our discussion of the hold harmless and indemnity clause, we find
R.S. 9:2778 and 38:2196 to be applicable to the Commission. As can be gleaned from the above, both Sections declare absolutely null, void and unenforceable, any provision in a public contract requiring that arbitration proceedings be brought in a forum or jurisdiction outside of this state. While Section 2196 contains language that enables a political subdivision to waive the nullifying effects of such an arbitration clause when in the best interest of its governing authority, Section 2778 contains no such waiver.
A review of the legislative history of both provisions reflects that R.S. 9:2778 was enacted by Act No. 582 (S.B. No. 899) of the Regular Session of the 1992 Louisiana Legislature. R.S. 38:2196 was enacted in the same Session by Act No. 75 (H.B. No. 256). While Act No. 75 was enacted on June 5, 1992, Act No. 582 became law on June 30, 1992 and, consequently, constitutes the latest expression of the legislative will.
It is a fundamental principle of statutory construction and/or interpretation that all statutory provisions are to be given effect whenever possible and that repeals by implication are not favored. Comegys v. Stanolind Oil and GasCompany, 227 La. 657, 80 So.2d 110 (1955) Rehearing denied. However, it is equally true that when two Acts passed during the same session on the same subject matter are irreconcilably in conflict, the Act last in order of position must prevail since it is the latest expression of the legislative will. State v.St. Julian, 221 La. 1018, 61 So.2d 464 (1952).
Act 582 (R.S. 9:2778) renders absolutely null and void the inclusion of certain proscribed provisions in public contracts involving the State of Louisiana. Act 75 (R.S. 38:2196), to the extent it attempts to create exceptions to the exclusion of these provisions, is in direct and irreconcilable conflict with Act 582. Consequently, it must yield to the latest expression of legislative resolve.
In summary, and for the reasons enumerated hereinabove, it is the opinion of this office that the lease between the South Louisiana Port Commission and KMI Iron constitutes a valid cooperative endeavor under Article VII, Section 14(C). Further, the provision found in R.S. 38:2195 pertaining to hold harmless and indemnity clauses is applicable to the Commission. Finally, the prohibitions contained in R.S. 9:2778 relative to arbitration are applicable to the Commission.
Trusting this adequately answers your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _______________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob, III, cla
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General