COLE, Judge.
This is a petitory action involving adverse claims of ownership of real property situated along the Mississippi River.
The suit was brought in the Nineteenth Judicial District Court for the Parish of East Baton Rouge by several landowners who claim title to Sections 61 and 62, Township 6 South, Range 1 West and Sections 37 and 38 of Township 6 South, Range 2 West, all of which property is supposedly located in East Baton Rouge Parish. The chain of title by which the plaintiffs claim ownership is also set out in the petition.
The pleadings further allege that Ash-land Plantation, Inc., and its mineral lessee, Chevron U.S.A., Inc. are, or may be, asserting title to a portion of the property under certain acts of conveyance and under judgment in that suit captioned Oliver v. Milliken & Farwell, Inc., 290 So.2d 738 (La.App. 1st Cir. 1974), which was originally tried in the Eighteenth Judicial District Court for the Parish of West Baton Rouge and later affirmed by this court.
The defendants, Ashland and Chevron, filed the declinatory exception raising the objection of improper venue. They claim the property in which the plaintiffs are apparently asserting an interest is actually located in West Baton Rouge Parish. (La. C.C.P. arts. 80(1), 3652). The district court, in written reasons for judgment, maintained the exception and rendered judgment dismissing plaintiffs’ suit. Plaintiffs appeal. We find for the reasons stated hereafter, the judgment must be reversed and the matter remanded to the district court for the taking of additional evidence.
This issue for decision resolved itself into a determination of the proper boundary between the parishes of East and West Baton Rouge. The appellants maintain the property to which they claim ownership is located within East Baton Rouge Parish because the actual boundary between those two parishes is the bed of the Mississippi River as it was located when the two parishes were created in 1807 and 1811. The appellees maintain the thread of the river in its present location is the parish boundary and the land in question, is, therefore, within the Parish of West Baton Rouge.
After argument in the district court, the trial judge concluded the present thread of the river is the proper point of division and the appellants’ suit was brought in an improper jurisdiction. His judgment was based primarily upon certain decisions of the United States Supreme Court which held, as between states with a river as a common boundary, where a gradual accretion of the river occurred the boundary would continue to be the thread of the river wherever it moved, but where the movement of the river took place as a result of sudden avulsion the former bed of the abandoned channel would remain as the boundary. Typical of those decisions is the case of Nebraska v. Iowa, 143 U.S. 359, 367, 12 S.Ct. 396, 399, 36 L.Ed. 186 (1892) in which that court said:
“The result of these authorities puts it beyond doubt that accretion on an ordinary river would leave the boundary between two states the varying center of the channel, and that avulsion would establish a fixed boundary, to-wit, the center of the abandoned channel.”
See also Mississippi v. Arkansas, 415 U.S. 289, 94 S.Ct. 1046, 39 L.Ed.2d 333 (1974).
*426 We conclude, however, state law must be applied in this case rather than the federal common law set out in the decisions just cited. In Fitzsimmons v. Cassity, 172 So. 824 (La.App.2d Cir. 1937), it was recognized the federal cases which relied upon those principles involved interstate boundary litigation, not present there or here. Recent decisions of the United States Supreme Court have continued to be cognizant of the applicability of state law where riparian boundaries are in dispute unless an overriding federal interest is present. See State Land Board v. Corvallis Sand and Gravel Company, 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977), and the authorities cited therein.
In Comegys v. Stanolind Oil and Gas Company, 227 La. 657, 80 So.2d 110 (1955), the Supreme Court of this state reviewed our jurisprudence in such matters. It summarized as follows:
“We have consistently held that, where the boundary lines of adjoining parishes have been previously defined by statute, though never established by actual survey on the ground, and where issue arose between two parishes as to the true location of the boundary, the provisions of Act 40 of 1855 were all-exclusive to the extent that the procedure outlined therein must first be resorted to and be exhausted as a remedy before recourse can be had in the courts. [Citations omitted.]
“Whenever an issue arose between adjoining parishes over the location of their statutory boundary lines and which had never been defined on the ground; or, where there arose a contest between landowners adjoining said boundary line, due to an uncertainty as to which court should entertain jurisdiction thereof, we have consistently held that the consideration and acceptance of landowners in that area adjoining the boundary line, and that of parish officials and official agencies, including proof of the levying and collection of taxes, was admissible proof, and that the judge before whom the suit has been originally instituted should hear and consider all relevant facts for the purpose of determining the extent of the territorial jurisdiction over which he presides. Our jurisprudence in that respect is founded on the maxim ‘L’erreur commune fait le droit’.” [Emphasis added.]
The record here contains no evidence of the nature suggested in Comegys nor evidence the parish boundaries have been officially fixed as provided for by LSA R.S. 50:221 et seq. And, even if the parish boundaries have been officially established, evidence is necessary to show where the subject property is situated in relation to those boundaries. The decisions of this court in Oliver v. Milliken & Farwell, Inc., supra, and its sequel, Oliver v. Milliken & Farwell, Inc., 361 So.2d 1248 (La.App 1st Cir. 1978), assumed the property in question was in West Baton Rouge Parish; the actual issue of its location was not raised. We find there is no other evidence of which we can take judicial notice which is decisive of the question. The cases cited by counsel as regards judicial notice are inapposite. As previously noted, there was no evidentiary hearing when this matter was heard in the trial court. We cannot assume facts not in the record.
For these reasons, the judgment appealed is reversed and this case is remanded to the district court for the taking of evidence consistent with this opinion. Assessment of costs is to await final disposition in the trial court.
REVERSED AND REMANDED.