498 So.2d 38 (1986)
RIVER LANDS FLEETING CORPORATION, et al.
v.
ASHLAND PLANTATION, INC. and Chevron U.S.A. Inc.
No. CA 85 0676.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
Rehearing Denied December 10, 1986.
*39 Christopher E. Janke, John M. McCollum, Guy E. Wall, New Orleans, for River Lands Fleeting Corp. et al.
Joseph W. Cole, Jr., Ventress, Roland C. Kizer, Jr., Baton Rouge, for Edith S. Herlitz trust.
Oliver P. Stockwell, Bernard H. McLaughlin, Jr., William E. Shaddock, William B. Monk, Lake Charles, William H. Mouton, Lafayette, D.A. Molony, J.S. Lastrapes, New Orleans, for Chevron, U.S.A., Inc.
Gary A. Bezet, R. Gordon Kean, Jr., Baton Rouge, for Ashland Plantation, Inc.
*40 Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is an appeal by plaintiffs, River Lands Fleeting Corporation, Mia Frances Doles, Trustee of the Edith S. Herlitz Trust, Benjamin R. Badley, Lorraine Badley Rush and Crutcher-Tufts Corporation (River Lands), from the granting of a motion for summary judgment based on ten years acquisitive prescription in favor of the defendants, Ashland Plantation, Inc. and Chevron U.S.A. Inc. (Ashland), in a petitory action.

FACTS
River Lands filed this action in East Baton Rouge Parish on April 12, 1979, to be recognized as owner of Solitude Point. River Lands claimed title to Sections 61 and 62, Township 6 South, Range 1 West and Sections 37 and 38 of Township 6 South, Range 2 West, all allegedly located in East Baton Rouge Parish. Chevron U.S.A. Inc., as Ashland Plantation's mineral lessee, was served with the citation on April 18, 1979, and Ashland Plantation, Inc. was served the next day. Ashland Plantation, Inc. had acquired the property in question called Solitude Point, as well as its "uplands,"[1] on October 30, 1969, in an Act of Exchange between Kenneth H. Kahao and itself. Kahao became the landowner by act of sale from Josephine R. Devall and others, dated April 14, 1969. Ashland Plantation, Inc. had granted a mineral lease to Chevron U.S.A. Inc. on April 23, 1973. The defendants responded by filing a declinatory exception raising the objection of improper venue, alleging that the land was located in West Baton Rouge Parish.
The trial court in East Baton Rouge Parish sustained the defendants' exception and dismissed the action. River Lands appealed the dismissal to this court. See, Riverlands Fleeting Corporation v. Ashland Plantation, Inc., 385 So.2d 424 (La.App. 1st Cir.1980). In reversing, this court held that in the absence of an official survey of the parish boundaries between East and West Baton Rouge, the "common error doctrine" mandated an evidentiary hearing to determine the proper venue to adjudicate the lawsuit.
After the evidentiary hearing, the East Baton Rouge Parish Trial Court found for the defendants and transferred the action to West Baton Rouge Parish. Defendants filed a peremptory exception raising the objection of acquisitive prescription, and requested an evidentiary hearing on the matter prior to trial. Subsequently, the defendants filed a motion for summary judgment based on the prescription question. The trial court granted the motion, and River Lands appealed.

TRIAL COURT
The trial court, in granting Ashland's motion for summary judgment, found Solitude Point to be an alluvial addition to the defendants' uplands property. There was no evidence in the record to contradict Ashland's experts, Dr. Charles E. Adams, Jr. and Mr. Austin Smith, that the accretion was formed by the gradual accumulation of river deposits known as alluvian. As such, the judge extended by operation of law the possession of the alluvian to Ashland, the owner of the "uplands."
The trial court also found River Lands resistance to the motion for summary judgment without merit. The question of Ashland's good faith at the time of the "uplands" acquisition could not be defeated. It did not matter that the property deed lacked a description of the alluvian nor a warranty over it. The "so-called title problems relate only to the exact discussion of the batture," not to the operation of constructive possession, through which the batture, by operation of law, is conveyed to the riparian landowner.
*41 River Lands other opposition to the dismissal motion was that ten years acquisitive prescription was interrupted when the suit was filed in East Baton Rouge Parish. The trial court also found no merit in this argument. Referring to the "common error doctrine," River Lands contended that the trial court in East Baton Rouge Parish had transferred the suit by reason of a commonly held misconception as to the property's location. River Lands presented no evidence sufficient to contradict the experts' testimony that the land was clearly located in West Baton Rouge Parish. With no proof on the record, the plaintiffs could not rely on the bare allegations of their petition to preclude the granting of the motion.

ASSIGNMENTS OF ERROR
River Lands, in its appeal, argues the trial court erred in granting the summary judgment motion for the foregoing reasons: (1) that Ashland lacked possession of Solitude Point in good faith and just title; (2) that prescription was interrupted by the filing of this lawsuit in East Baton Rouge Parish; and (3) that Ashland exercised "little possession" over Solitude Point while there were many acts of adverse possession by third parties.

ASSIGNMENT OF ERROR NO. 1
Plaintiffs' first cited error is without validity. River Lands contends that Ashland lacked both good faith and just title as required for acquisitive prescription, La.Civ.Code art. 3479 (presently, La. Civ.Code art. 3475).[2] Ashland's purchase of the land in October 1969 met all the prerequisites of ten year acquisitive prescription as provided for by Louisiana law. La.Civ.Code art. 3481 (presently, also numbered, La.Civ.Code art. 3481) establishes a presumption of good faith when a vendee purchases property from his vendor. None of River Lands' allegations rebut that codal presumption. Ashland's exchange for the property in 1969 from Kenneth Kahao is presumed to have been done in good faith. Kenneth Kahao's earlier acquisition, on April 12, 1969, of the same property, was presumptively also completed in good faith between his vendor and himself. If tacked to its original vendee, as provided for under La.Civ.Code art. 3493 (presently, La.Civ. Code art. 3442), Ashland has been in uninterrupted physical possession of the property, called the "uplands", without notice of any defects in ownership, since April 12, 1969, more than the requisite ten years.
Solitude Point is that portion of the land that has been built up through the sedimentary deposits of the Mississippi River. It is an alluvial formation formed by the gradual, imperceptible accumulation of river deposits. No contradictory testimony was put forth by plaintiffs to substantiate its allegation of a rapid, sudden change in the course of the waterway. As the property in controversy is alluvian, it follows that possession of the "uplands" extends by operation of law to include such batture or alluvian in the absence of actual physical adverse possession of the batture by someone else. See La.Civ.Code arts. 509-512, 516-18 (presently, La.Code art. 499-505). The operation of law dedicates the alluvian to the riparian owner, and adjudication determines the proportionate share of the river deposits to the owners. See, Oliver v. Milliken & Farwell, Inc., 290 So.2d 738 (La.App. 1st Cir.1974). It is the civil code that determines ownership to such land formation, not a judicial decree nor a property description. It was not necessary that the title description expressly include ownership to Solitude Point since ownership was conveyed by operation of law. Ashland owned, by codal right, its proportionate share of the alluvial known as Solitude Point. Even the deed itself designates "all of vendor's rights, title, and interest which they may have in and to the batture, right of, dereliction, and rights of apportionment of all the alluvian, batture and sandbars formed or attached" to the purchaser of the "uplands," Ashland.
*42 River Lands next contends that Ashland never acquired just title to Solitude Point due to a lack of detailed description in the deed. River Lands' reliance on Pure Oil Company v. Skinner, 294 So.2d 797 (La. 1974) and Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225 (1947) is ill-founded for their allegation. Both cases dealt with litigants who physically possessed the same area of land. Further, both cases focused on the lack of a proper description that created an imprecise determination of the deeded property. In this litigation, River Lands offered no allegation nor proof of their actual possession of Solitude Point. Ashland's deed does give the best description possible for the land in question. Solitude Point's geological nature, a successive yet imperceptible formation, prohibits an exact and precise location of the property's eastern boundary. Its river boundary was not yet determined until this court upheld the trial court's decision in Oliver v. Milliken & Farwell, Inc., 361 So.2d 1248 (La.App. 1st Cir.1978), writ denied 363 So.2d 68 (La. 1978). The lack of an eastern line due to the flow of the Mississippi River does not preclude just title. Ashland's deed was certainly sufficient to transfer ownership of the property for ten years acquisitive prescription.
The so-called title problems relate only to the exact dimensions of the batture belonging to the riparian or "uplands" owner. These facts do not prevent the operation of constructive possession, La.Civ.Code art. 3437 (presently, La.Civ.Code art. 3426). Since alluvian ownership attaches to the property conveyed by operation of law, it need not be further described with particularity. Barbera v. Midway Land Company, Inc., 453 So.2d 645 (La.App. 5th Cir. 1984); Hayward v. Noel, 225 So.2d 638 (La.App. 1st Cir.1969).

ASSIGNMENT OF ERROR NO. 2
River Lands asserts that La.R.S. 9:5801 (presently La.Civ.Code 3462) permits interruption of prescription when an action is initiated in a court of competent jurisdiction and venue. While this is true, the facts in this case preclude the statute's application. River Lands lacked proper venue when the trial court in East Baton Rouge Parish transferred the lawsuit to West Baton Rouge Parish. The statute also provides that even if the action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period. This was not done. River Lands filed the suit on April 12, 1979, but service was not perfected on Chevron U.S.A. Inc. until April 18, 1979, and on Ashland Plantation, Inc. until April 19, 1979. However, Ashland's predecessor in title, Kenneth Kahao, acquired the property on April 14, 1969, ten years and four days prior to service being rendered on either defendant. Since Ashland could tack its possession, under La. Civ.Code art. 3493 (presently, La.Civ.Code art. 3442), as a good faith purchaser, (see Assignment of Error No. 1) onto its previous transferer, Kahao, the date of service was untimely to interrupt acquisitive prescription.
The interruption argument also falters because River Lands never alleged valid title to the property in question. As recent as 1974, the Louisiana Supreme Court recited the necessary burden of a plaintiff in a petitory action. In Montgomery v. Breaux, 297 So.2d 185 (La. 1974), Justice Barham stated that a plaintiff in such an action "must rely on his own title's strength and not on the weakness of that of his adversary," Montgomery, at 187. The defendant's title in a petitory action is not at issue until the plaintiff has proved valid title in himself. Aymond v. Smith, 476 So.2d 1081 (La.App. 3rd Cir.1985); Garrett v. Ernest, 369 So.2d 713 (La.App. 1st Cir.1979). River Lands never did.

ASSIGNMENT OF ERROR NO. 3
River Lands alleges that certain acts constitute adverse possession to interrupt acquisitive prescription. River Lands relies on acts of cattle grazing, hunting, seismic operations, timber cutting, and *43 crawfish netting by third parties as proof of adverse possession. The record indicates, however, that all persons who knew of such activities or who participated in them did not have the intent to own that land. La.Civ.Code arts. 3436 and 3488 (presently, La.Civ.Code arts. 3424 and 3427, respectively) describe two attributes of possession: (1) the intent to possess as owner and (2) the presumption to intend to possess as owner. These acts were vacant of any evidence of a presumption or intent to own.
"Possession is not interrupted when it is merely disturbed. Possession is interrupted when it is lost," Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975) (J. Tate in his concurrence on the denial for rehearing). Ashland never lost its constructive possession of Solitude Point. The acts of third parties that allegedly constitute adverse possession were not done continuously and unequivocally, La.Civ.Code arts. 3487 and 3500 (presently, La.Civ.Code arts. 3436 and 3476, respectively). See also, James Harvey Ramsey Estate, Inc. v. Pace, 467 So.2d 1202 (La.App. 2nd Cir.1985); W.B. Norton v. Addie, 337 So.2d 432 (La. 1976).
Therefore, for the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.
SHORTESS and CARTER, JJ., concur with reasons.
SHORTESS and CARTER, Judges, concurring.
The trial court was not clearly wrong in ruling that the land in question was alluvion. Alluvion belongs to the owner of the bank. Ashland has just title, acquired in good faith, to the uplands and the alluvion. It has constructively possessed the alluvion for the requisite period. None of the alleged acts of interruption were sufficient to have that effect. There is no genuine issue of material fact, and defendants are entitled to summary judgment as a matter of law.
For these reasons, we believe that plaintiffs' petitory action was correctly dismissed.
We respectfully concur.
NOTES
[1] "Uplands" is that land bordering on bodies of water. Black's Law Dictionary 1709 (4th ed. 1951).
[2] As it appeared prior to its amendments, by 1982 La.Acts, No. 187, § 1.