567 So.2d 113 (1990)
TENNECO OIL COMPANY
v.
BOARD OF COMMISSIONERS FOR the LAKE BORGNE BASIN LEVEE DISTRICT.
No. 89-CA-2235.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 1990.
On Rehearing August 31, 1990.
Writ Denied November 26, 1990.
*114 Mack E. Barham, Robert E. Arceneaux, and Gail N. Wise, Barham & Associates, New Orleans, for appellant.
John F. Rowley, Dist. Atty., William P. Schuler, and Marcel Gueniot, Asst. Dist. Attys., Chalmette, for appellee.
Before LOBRANO, WARD and ARMSTRONG, JJ.
LOBRANO, Judge.
Tenneco Oil Company filed the instant suit against the Lake Borgne Levee District (Levee Board) seeking compensation for the cost of relocating certain of its pipelines because of the proposed enlargement of the Mississippi River Levee.[1] Prior to trial, Mobil Oil Company (Mobil) purchased the Tenneco refinery and was substituted as the proper party plaintiff.
The facts of this case are relatively simple. Mobil owns a refinery in Chalmette, La. which is situated on property adjoining the Mississippi River. The river levee, situated across Mobil's property, is approximately three to four hundred feet from the edge of the river. The refinery is located on the land side of the levee. There also exist numerous pipelines which cross the crown (top) of the levee and run to the wharves and other facilities along the river. These pipelines were constructed pursuant to permits obtained from the Levee Board and/or the U.S. Army Corps of Engineers (Corps). It is generally recognized that each such permit contained the following or a similar clause:
"That should changes in the location of the existing levee and/or river, or in the generally prevailing conditions in the vicinity, be required in the future in the public interest, the applicant shall make changes in the project concerned, or in the arrangement thereof, as may be necessary to satisfactorily meet the situation, and shall bear the cost thereof."
In conjunction with its plans to enlarge the Mississippi River levee (both height and width) the corps, beginning in 1977, requested the Levee Board to provide it with the necessary additional rights of way to accomplish this project.[2] By resolution dated March 21, 1978 the Levee Board "appropriated" from Mobil the required additional servitudes. The evidence is clear that the additional servitudes across Mobil's property are located on the river side of the existing levee.
The Corps' levee enlargement plans also required the relocation of Mobil's existing pipelines.[3] The Corps and Levee Board advised Mobil that this undertaking would be at Mobil's expense and in accordance with the provisions of the original pipeline permits. After numerous discussions, negotiations, engineering studies and plan revisions, the Corps and Mobil agreed to a "Twenty Year Modification Plan." The purpose of the plan was to make the burden and cost of relocating the pipelines minimal. Mobil was allowed to move certain *115 of their lines at their convenience, such as during normal maintenance or shutdown. However, they agreed to a definite time span within which each relocation had to be accomplished.
As of the date of trial, many of the relocations had been completed, while many still remained. However, Mobil did not waive its right to pursue cost reimbursement for these relocations, and proceeded to trial on that issue. By agreement of the parties, the trial court severed quantum, and tried only the liability issue.
The trial court rejected Mobil's demands and held that no compensation was due. Mobil perfects this appeal. It argues that the court erred by ignoring the constitutional and statutory provisions which require just compensation in levee "appropriations" and, that the court erred in concluding that Mobil was bound by the provisions in the original pipeline construction permits which provided, in essence, that Mobil bore the costs of relocation if levee maintenance or enlargement was required.
The issue for our determination is whether, under the particular facts of this case, the Levee Board must reimburse Mobil for the cost of relocating its pipelines.
A riparian property owner owes a legal servitude to the public for levee purposes.[4]La.C.C. Article 665. Prior to the adoption of the 1974 Constitution, compensation for the taking of property pursuant to Article 665 was limited to its assessed value for the preceding year. La. Const. of 1921 Art. 16, Sec. 6. The compensation provided by the 1921 Constitution has been characterized as a mere gratuity on the theory that a riparian landowner historically owed a legal servitude for levee purposes, thus "just compensation" as required in other takings was not necessary. Taylor v. Board of Levee Commissioners of Tensas Basin Levee District, 332 So.2d 495 (La.App. 3rd Cir.1976). See also, La. Const. of 1921 Article 1, Sec. 2 which provided for payment of just compensation for the taking of private property for public purposes.
With the adoption of the 1974 constitution, however, the measure of compensation was changed. Effective January 1, 1975 our present constitution provides in Article 6, Section 42:
"(A) Compensation. Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law. However, nothing contained in this Paragraph with respect to compensation for lands and improvements shall apply to batture or to property the control of which is vested in the state or any political subdivision for the purpose of commerce. If the district has no other funds or resources from which the payment can be made, it shall levy on all taxable property within the district a tax sufficient to pay for property used or destroyed to be used solely in the district where collected.
(B) Appropriation. Nothing in this Section shall prevent the appropriation of such property before payment."
The "assessed value" measure of compensation of the 1921 Constitution was carried forward as a statute until the adoption of Act 314 of 1978.[5] That act provided that compensation for lands and improvements actually used, damaged or destroyed for levees or levee drainage purposes would be at fair market value to the full extent of the loss.[6] The act also provided that it *116 would be applicable to all takings after its effective date, and to all suits pending on July 10, 1978. The following year, the legislature adopted Act 676 of 1979 which amended and reenacted Act 314. It provided substantially the same language with respect to compensation. One notable difference, however, was the exclusion of "[b]atture or ... property, the control of which is vested in the state or any political subdivision for the purpose of commerce."
In 1985 the legislature amended and renacted the entirety of Chapter 4 of Title 38 of the Revised Statutes relative to levees and levee districts. However, the fair market measure of compensation initiated by Act 314 of 1978 was not changed. As amended, La.R.S. 38:301(C)(1)(a) mandates that "lands, exclusive of batture, and improvements hereafter actually taken, used, damaged or destroyed for levee or levee drainage purposes shall be paid for at fair market value to the full extent of the loss."
This court is satisfied that as of at least July 10, 1978, the measure of compensation for lands and improvements used or taken for levees and/or levee purposes is fair market value. Although the riparian landowner still owes the legal servitude of Civil Code Article 665, the public (i.e. state, levee board) can no longer exercise that servitude without payment of just compensation which is fair market value.[7] The only exception is "batture" which is not involved in the instant litigation.[8]
In the instant case, the facts are clear that in order to accomplish the levee enlargement additional servitudes were required. However, in terms of compensation owed, there is no difference between the acquisition of an original levee servitude or an additional servitude. In either case there is a use or destruction of private property which the 1974 constitution and statutory law mandate must be compensated at fair market value.
The Levee Board argues, however, that when Mobil obtained their permits for the original pipeline crossings they agreed to absorb the costs associated with "any changes in location or the section of the existing levee" which may be required in the future. Thus, they argue, these "conditional" permits preclude Mobil's recovery in the instant situation. We disagree.
Initially we note that the law imposes on the servient landowner the duty not "to diminish or make more inconvenient the use of the servitude." La.C.C. Art. 748. Thus, as it applies to changes or work within the existing levee servitude, the conditional clause in Mobil's permits is merely a restatement of what the law already requires of one who owes a servitude and is clearly valid. However, as it applies to the acquisition of new or additional servitudes we conclude that the conditional clause is not enforceable and does not preclude Mobil's reimbursement for its pipeline relocations. Our conclusion is based on an interpretation of the clause which is consistent with both constitutional and statutory requirements.
*117 In Tenneco v. Greater Lafourche Port Commission, 427 F.2d 1061 (5th Cir.1970), cert. denied 400 U.S. 904, 91 S.Ct. 142, 27 L.Ed.2d 111 (1970), the Fifth Circuit avoided the constitutional issue and relied on its interpretation of a similar clause to allow recovery by Tenneco for its pipeline relocation. Applying Louisiana law, the court held that Tenneco was not required to pay for alterations to its pipeline occasioned by the states' encroachment on Tenneco's adjacent servitude. Tenneco had built its original pipeline pursuant to a state permit which contained a clause almost identical to the one imposed in the instant case. The state argued that Tenneco was precluded from recovery because of that permit. The court held that, "a proper construction of the Public Works permit limits its effect to the area within the right of way granted...." Id. at 1064. Thus, encroachments outside of the permitted area require compensation.
In the instant case, we conclude that the phrase "should any changes ... in the existing levee ... be required" refers only to future work within the existing servitude area. A reasonable interpretation of the conditional clause is that when the servient landowner is granted permission to "interfere" with the servitude, i.e. is given a permit, any improvements constructed by him are done so at his own risk should future work be necessary within the area encompassed by the permit.
We are of the opinion that this interpretation is consistent with constitutional and statutory law. A contrary interpretation, as suggested by the Levee Board, would result in a taking of property without payment of fair compensation in violation of basic Constitutional due process, as well as the provisions of R.S. 38:301.
In 1926 the United States Supreme Court addressed the basic issue of a state imposing conditions on the granting of a permit. In Frost v. Railroad Commission of State of California, 271 U.S. 583, 593-594, 46 S.Ct. 605, 607, 70 L.Ed. 1101 (1926), the Court stated:
"It is not necessary to challenge the proposition that, as a general rule, the state, having the power to deny a privilege altogether, may grant upon it such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guarantees imbedded in the Constitution of the United States may thus be manipulated out of existence."
See also Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (state may not condition continued public employment on relinquishment of right to invoke fifth amendment privilege against self-incrimination); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (state may not condition receipt of unemployment benefits on relinquishment of right to free exercise of religion.)
In United Gas Pipeline Company v. Terrebonne Parish Police Jury, 319 F.Supp. 1138 (E.D.La.1970), affirmed 445 F.2d 301 (5th Cir.1971) the issue confronting the court was very similar to the instant case. A permit obtained by United Gas from Terrebonne Parish to lay its pipeline contained the requirement that United bear the expense of relocation if the line interfered with any "future" parish improvement. Although the court ruled, on rehearing, that Federal regulations preempted the local ordinance of Terrebonne Parish, and thus the condition could not be imposed on United, the court's initial ruling is most appropriate to this case. On original hearing, the court held:
"[T]he additional requirement that United must agree to alter, relocate or remove its proposed pipeline at its sole expense, if it interferes with any future parish public improvement is, in effect, confiscatory and must fall. This condition precedent to the issuing of a permit would result in the taking of the pipeline company's property without the payment of just compensation in violation of the *118 due process clause of the Fourteenth Amendment." Id. at 1143.

For these same reasons we determine that our interpretation of the "conditional" permit is in accord with constitutional and statutory requirements. We hold that the permit cannot be conditioned upon the permitee giving up his basic right to fair compensation for property or improvements that may be taken for some future work and which are located outside of the permitted area.
For the reasons assigned, we reverse the judgment of the trial court and remand for further proceedings.
REVERSED AND REMANDED.
Before LOBRANO, WARD and ARMSTRONG, JJ.
LOBRANO, Judge.
The Levee Board seeks a rehearing of this matter asserting several arguments as to why our original holding is incorrect. The majority of those arguments were addressed in our initial opinion 567 So.2d 113 (La.App.1990) and we find it unnecessary to address them here. However, we do feel it necessary to reconsider two issues which the Levee Board raises and which are germane to the case.
First, the Levee Board strenuously argues that the record does not support our conclusion that there was a taking of additional land from Mobil for the levee enlargement.[1] They argue that we erred when we relied on the March 21, 1978 resolution to support this conclusion. Without any additional servitude being taken, the Levee Board concludes that there can be no compensation for the destruction of improvements.
Based on the rationale of our original opinion this conclusion would be correct if indeed there were no additional servitude taken. The whole premise of our holding is that compensation is due for the destruction of the improvements located on the "additional servitude." Naturally if no additional servitude were used, Mobil must bear the cost of removing the improvements within the existing servitude. The record, however, clearly substantiates the fact that additional lands were taken for levee enlargement purposes.
At the beginning of the trial of this matter both parties entered into several stipulations. We quote stipulations one and two as follows:
Beginning in the early part of 1978 approximately.58 acres of industrial land located on Tenneco property on the river side of the levee were used to support levee enlargement.
On January 5, 1979, at the request of the Army Corps of Engineers, the Lake Borgne Levee District acted to appropriate additional Tenneco property along the river side of the Mississippi River levee for a "borrow pit."
Although Mobil did not pursue its claim for compensation for the use of the land taken (neither the land used for the levee nor the borrow pit), we are satisfied that there was in fact a taking of additional properties. We do concede, however, that the record is unclear as to whether those additional lands are within the existing levee servitude or they comprise an additional servitude. For the reasons stated in our original opinion, compensation is due only for the destruction of those improvements situated on any additional servitude taken. The trial court must determine the extent of the additional lands taken and whether they are part of the existing servitude or comprise an additional servitude.
In addition, the Levee Board also argues that we erred in our determination that the additional land taken was not batture. That issue was never raised in the Levee Board's original brief, although on oral argument counsel did raise it. As we noted in our original opinion the only evidence in the record on this issue is testimony that the levee is located three to four hundred feet from the river's edge. As per the reasons stated in stipulation six, the *119 parties agreed not to litigate the batture issue. That stipulation provides:
Trial on the issue of liability for just compensation for the .58 acre tract involves the complex issue of whether the land between the toe of the levee and the river is batture and that litigation would involve several expert witnesses, additional costs and expenses, and additional time from the court.
As noted in our original opinion, the law is clear that batture is excluded from the requirement that fair market value compensation be paid. It is equally clear to this court that improvements located on batture are also excluded. However, we are of the opinion that the Levee Board bears the burden of proving that the servitude taken is in fact batture. Since this issue was not litigated at the trial level, and since its determination is necessary for the ultimate resolution of this case, we remand for that purpose also.
Accordingly, we modify our original decree in the following respects. On remand, the trial court is to determine if the additional land used for the levee enlargement is within the existing servitude or whether it comprises an additional servitude. If it is deemed an additional servitude, then the court must determine if it is part of the batture. If it is not part of the batture, then we adhere to our original decree and hold that Mobil is entitled to the fair market value of those improvements located on the additional servitude which were destroyed.
To the extent they are not inconsistent with this modified decree, we reaffirm the holdings of our original decree.
REVERSED AND REMANDED.
NOTES
[1] Tenneco also sought compensation for the taking of approximately .58 acres of land. However, prior to trial they dismissed this claim. Thus the only issue is compensation for the improvements.
[2] The Lake Borgne Levee District has jurisdiction and control of all levees within the subject area of this suit. It is the legal entity which must acquire the rights of way.
[3] The pipelines were not actually moved to a different location, but were raised and/or extended to allow for the additional height and width of the levee project.
[4] The jurisprudence is now settled that the levee servitude is owed by riparian property which bordered a navigable waterway at the time it was severed from the public domain. Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749 (1956); Jeanerette Lumber & Shingle Co., LTD. v. Board of Commissioners for the Atchafalaya Basin Levee District, 249 La. 508, 187 So.2d 715 (1966).
[5] Formerly, La.R.S. 38:281(B).
[6] That act, provided in pertinent part:

B. All lands and improvements, Orleans Parish excepted, hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for at fair market value to the full extent of the loss, and just compensation for both the land and improvements taken or destroyed and for damages suffered by reason thereof, shall be paid to the owner or into the court for his benefit.
* * * * * *
The compensation defined herein shall apply to all lands and improvements taken, damaged or destroyed for levee and levee drainage purposes after the effective date of this Act, and to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes.
[7] Although when referring to levee servitudes the word "appropriation" constantly appears in the Constitution (Art. 1, Sec. 4; Art. 6, Sec. 42) and in R.S. 38:301, that terminology is no longer correct insofar as it refers to a taking without compensation. More appropriately, it should be termed "expropriation."
[8] "Batture" has been defined and equated with alluvial build up. River Lands Fleeting v. Ashland Plantation, 498 So.2d 38 (La.App. 1st Cir. 1986), writ denied, 502 So.2d 565 (1987). Although arguably the banks of navigable waterways subject to the servitudes of public use established in Civil Code Articles 456 and 665, may include the batture, the entire bank is not necessarily all batture. Thus the constitution and R.S. 38:301 requires payment at fair market value for that portion of the bank taken which is not batture. In this case the levee is located three to four hundred feet from the rivers edge, and although it may be part of its bank, the levee certainly is not on the batture.
[1] On original hearing, the Levee Board did not seriously raise this issue neither in brief nor oral argument. In fact, during oral argument, counsel for the Levee Board agreed with this Court's statement that additional lands were necessary to enlarge the levee.